[Crim. No. 2857. Second Appellate District, Division Two.—June 18, 1936.]

THE PEOPLE, Respondent, v. SUEO H. OKADA, Appellant.

J. Marion Wright for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

GOULD, J., *pro tem.*—In 1935 the California state legislature added to the category of crimes a felony denominated "Negligent Homicide", in these words: "When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle in a negligent manner or in the commission of an unlawful act not amounting to felony, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the state prison for not more than three years." (Stats. 1935, chap. 764; sec. 500, Vehicle Code.)

Defendant herein was accused by information of "the crime of negligent homicide in violation of section 500, Vehicle Code, a felony, committed as follows: That the said S. H. Okada on or about the 18th day of December, 1935,

. . . did willfully, unlawfully and feloniously operate a vehicle, to wit, an automobile, in a negligent and unlawful manner, causing the death of one Clifford Merrill Rippie, a human being''. Upon trial a jury found him guilty and he was sentenced to serve one year in the Los Angeles County jail. From the court's judgment and orders denying motions for new trial and in arrest of judgment defendant appeals.

It is to be noted that the statute is phrased in the alternative, having to do with death resulting from injuries ''caused by the driving of any vehicle in a negligent manner *or* in the commission of an unlawful act not amounting to a felony''. In the information filed herein appellant was charged only under the first alternative, i. e., with ''operating a vehicle to wit, an automobile, in a negligent and unlawful manner''. Nevertheless, the court instructed the jury concerning the ''commission of an unlawful act not amounting to a felony'', and further told the jurors: ''It is not necessary that there be proof of both a driving of a vehicle in a negligent manner and the doing of another unlawful act not amounting to a felony. If you are satisfied to a moral certainty and beyond a reasonable doubt that the defendant was driving the vehicle in question in a negligent manner and while so driving caused the injury which proximately resulted in the death of Clifford Merrill Rippie, then you should find the defendant guilty as charged. Or, if you are satisfied to a moral certainty and beyond a reasonable doubt that at the time the injuries proximately resulting in the death of Clifford Merrill Rippie were inflicted the defendant was driving the vehicle in question and while so driving committed an unlawful act not amounting to a felony, which act was the proximate cause of the death of said Rippie, then you should find the defendant guilty as charged.'' Two other instructions also treated of the same subject.

By these charges the jurors were instructed to find appellant guilty if death resulted from the commission of an unlawful act not amounting to a felony, when this phase of the offense was not charged in the information. Such instructions, going outside the scope of the formal charge as set forth in the information, were erroneous and prejudicial to appellant's rights.

Error was also committed in instructing the jury as to the matter of appellant's ''restricted'' automobile opera-

tor's license. As a witness in his own behalf he testified that he had a "restricted license", that he did not know it prohibited his driving unless he wore glasses, that he was not wearing glasses at the time of the accident, that his eyesight was good and that he did not know the conditions of the restriction in his license until after the accident. An eye specialist testified that appellant's vision was good and that at the time of the accident it was not necessary for him to wear glasses in order to see properly while driving an automobile. Nothing was offered by respondent to contradict this testimony, and there was no evidence, either of a primary nature, by introduction of the operator's license, or of a secondary nature, by photostatic copy or otherwise, to show what were the exact terms of the restriction.

Section 273 of the Vehicle Code provides that a special restricted license may be issued or that restrictions may be set forth upon the usual license form, and that the vehicle department whenever good cause appears shall have authority "to impose restrictions suitable to the licensee's driving ability with respect to the type of, or special mechanical control devices required on, a motor vehicle which the licensee may operate, or ·such other restrictions applicable to the licensee as the department may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee". Nowhere in the record does it appear what the terms or conditions of appellant's restricted license were. Nevertheless the court told the jurors that."the evidence shows that the defendant was licensed as an operator of an automobile upon condition that he wear eyeglasses at all times while operating an automobile", and further instructed that if the jurors believed appellant operated his automobile "in violation of a restricted operator's license and that such driving . . . was the proximate cause of the injuries received" by the deceased, they should find him guilty of negligent homicide. Such instructions, implying as they did the unproved facts as to the contents of the restricted license, were improper in the absence of evidentiary showing as to the actual terms and conditions of such license. ■ Moreover, as conceded by respondent, the violation of the provisions of a restricted license would be the "doing of an unlawful act not amounting to a felony", which was not charged in the

information herein, thus constituting an additional ground why instructions relating thereto were improper.

■ Instructions were given as to speed limits in business and residential districts. There had been testimony that the accident happened in a district built up with business establishments, in an attempt to show that such locality came within the Vehicle Code definition of a "business district". But there was no evidence whatever that the district was sign-posted either as a business or residential district. The Vehicle Code, section 758, states that "every highway shall be conclusively presumed to be outside of a business or residence district" unless such district is duly sign-posted as required by the code, and section 468 details the method of such sign-posting. Instructions as to speed in a business district were therefore improper herein without proof from which the jurors might infer that the district where the accident occurred was in fact a business district.

Many other points relating to instructions are made in the briefs but we deem it unnecessary to discuss them in detail. Enough has been said to indicate that with the sharp conflict in evidence and with appellant's plausible defense of an unavoidable accident the errors complained of must result in a reversal of the case.

The order in arrest of judgment being nonappealable, the attempted appeal therefrom is dismissed. The judgment and order denying motion for new trial are reversed.

Crail, P. J., and Wood, J., concurred.