[Crim. No. 4044. Second Dist., Div. Three. Jan. 22, 1947.]

THE PEOPLE, Respondent, v. ERNEST LEITGEB, Appellant.

Gold & Needleman and Robert Kingsley for Appellant.

Robert W. Kenny, Attorney General, and Laughlin E. Waters, Deputy Attorney General, for Respondent.

SHINN, J.—Appellant, Ernest Leitgeb, was convicted in a jury trial of the unlawful killing of one Eugene Kasmer by means of a vehicle being driven with gross negligence. He appeals from the judgment and an order denying his motion for new trial. Defendant was prosecuted under section 192, subdivision 3(a) of the Penal Code. The sole issue of fact was whether he was grossly negligent in the operation of his car.

 In appellant's opening brief the case is summarized as follows: "According to defendant and his witnesses, defendant was driving west, on Sunset, on the street car tracks (the center traffic lane of the street), at about 25 miles per hour, when the decedent, crossing the street from south to north, suddenly appeared out of the darkness in front of the car. Defendant and his witnesses testified that defendant immediately applied his brakes, but was unable to avoid the accident. The prosecution's witnesses testified that defendant, driving about 40 miles per hour, in the lane immediately north of the car tracks (lane 2 of the three west bound traffic lanes), suddenly veered to his left through the street car safety zone, immediately in front of an on-coming street car, and hit decedent, who was standing at the extreme westerly end of that zone."

The points on appeal are stated as follows: "(1) That the testimony for the prosecution is so incredible as not to justify

its acceptance by the jury; and (2) That, even if the prosecution's theory of events should be accepted, the evidence fails to show gross negligence.''

The fatal accident occurred at about 6:30 p. m. at the intersection of Portia Street and Sunset Boulevard, in Los Angeles. Portia Street, running north and south, intersects at right angles and deadends with Sunset Boulevard, an east-west arterial. Portia Street is 40 feet wide, and Sunset Boulevard is some 76 feet in width. Of the two crosswalks extending across Sunset Boulevard at this intersection, the one on the east side of Portia is unmarked and 9 feet in width, and the one on the west side of Portia is marked and 17 feet wide. The northwest and northeast corners of the intersection are lighted by ornamental light standards and these lights are supplemented by lights from a gas station located on the northeast corner, and by lights from the windows of a drugstore situated on the northwest corner. There are also lighting standards on the south side of Sunset Boulevard, at the intersection. Visibility is good in the whole intersection. Pacific Electric streetcar tracks are laid east and west along Sunset Boulevard. On the northeast corner is a safety zone for westbound traffic, extending east 57 feet from the east edge of the unmarked crosswalk. There is a similar safety zone for eastbound streetcar traffic on the south side of Sunset Boulevard. There was evidence that conditions of visibility at the safety zone on the northeast corner were very good.

Mr. Burt Lehan, an engineer in the Engineering Department of General Motors, testified that on November 10, 1945, at 6:30 p. m., he was in his car waiting for an opportunity to turn left from Portia Street onto Sunset Boulevard. He saw the decedent, wearing dark clothes, standing inside the safety zone located on the northeast corner of the intersection about two feet from its west end. He first observed the appellant's car when it was approximately 15 feet from decedent Kasmer. Appellant was driving west on the north side of Sunset Boulevard between the safety zone and the north curb. Because of the rapidity with which events transpired, the witness was unable to form an estimate of the speed of appellant's car. Appellant's car was parallel to and either very near or just inside the safety zone, the witness being unable to distinguish because of the oblique angle of his vision. As appellant's car neared the intersection it turned to the left, angling across the west end of the safety zone. The paths of the wheels of ap-

pellant's car, as diagrammed by the witness, showed that the left wheels cut directly across the safety zone and that the right wheels passed just outside the northerly boundary and around the northwest corner of the safety zone. Appellant's car struck Kasmer, throwing him into the air, and carried him forward for approximately 80 feet. The body came to rest near the west crosswalk and the appellant's car stopped some 15 feet beyond the body. This testimony was corroborated by that of Robert G. Farr, a witness for the People. He was a motorman-conductor for the Pacific Electric Railway and was in charge of a westbound streetcar on Sunset Boulevard. He first observed Kasmer standing inside the safety zone, near the west end, when his streetcar was 150 feet from the intersection. Appellant's car passed the streetcar on the right-hand side at a speed of 40 miles per hour. The streetcar was 70 feet from the intersection when appellant's car cut through the safety zone and struck Kasmer. The body was thrown high in the air, enabling the witness to see it above the top of appellant's car. Appellant's car continued through the safety zone onto the streetcar tracks and continued west until it stopped about 15 feet beyond the body of decedent, which had been carried to a point 10 or 12 feet beyond the west edge of the west crosswalk. He saw appellant get out of his automobile from the left-hand side. Witness Henry Lederman for the People corroborated in part the testimony of the two preceding witnesses, testifying that he had driven slowly past the safety zone just prior to the accident and had noticed a person wearing a dark suit standing still in the safety zone. Officer Rogers testified that he picked up a hat belonging to the decedent in the northeast quarter of the intersection.

Appellant testified that he was driving in the left-hand lane of traffic on the streetcar tracks at approximately 25 miles per hour; that there were several automobiles but no streetcars ahead of him; that when he arrived at the intersection of Portia and Sunset Boulevard, the decedent stepped in front of his car; that he had not seen the decedent prior to the time decedent stepped in front of the car; that he applied his brakes immediately upon seeing the decedent and that his brakes were in good mechanical condition. The impact was on the left front portion of the car, damaging the grill, radiator ornament and left front fender. He testified that he stopped his car, got out and found decedent lying about 15 feet to the rear of the car. His testimony was corroborated by

that of his wife and son, who were riding with him. Mrs. Leitgeb testified that she saw decedent a "split second" and screamed just before the car struck him.

An attack is made upon the testimony of all the witnesses for the prosecution as incredible. The principal features of this testimony were in that of Farr, who estimated defendant's speed at 40 miles an hour, in the testimony of Lehan that decedent was standing inside the safety zone at the time he was struck, and in that of the witness Lederman, who had noticed a person wearing a dark suit standing in the safety zone immediately prior to the accident. When defendant's charge of incredibility of the testimony of these witnesses is examined, it is found to consist of an argument that their testimony was proved to be untrue by the contradicting evidence of defendant and his witnesses. The testimony of the State's witnesses was no more incredible than the testimony of the witnesses for defendant. While the versions of the two sets of witnesses were in direct conflict, the accident could have happened exactly as related by the State's witnesses or just as it was described by defendant and his witnesses. The testimony of Farr was positive and clear. Defendant argues that Farr's streetcar was nowhere near Portia Street when the accident occurred, and that he could not have witnessed it. He does not rely upon any inherent weakness in Farr's testimony but only upon the testimony of his own witnesses. One defense witness testified that after the accident she walked toward the east and saw a streetcar coming from the east about a block from Portia Street, another testified that the streetcar did not arrive until about 15 minutes after the accident, and another testified that it was more than a block to the east when the accident occurred and did not arrive for six or seven minutes thereafter. Other witnesses were not questioned as to whether they observed the streetcar. Arguments of the same nature are made concerning the testimony of the prosecution's other witnesses that the decedent was in the streetcar safety zone at the time he was struck and are equally without merit.

Defendant's remaining point is that, giving full effect to the evidence of the prosecution, it was insufficient to prove gross negligence. The verdict of the jury is a conclusive determination, so far as this court is concerned, that the accident occurred in a manner consistent only with the evidence which tended most strongly to establish gross negligence of defendant in the operation of his car. We are therefore obliged to

view the testimony of the People's witnesses as if it was given full credit by the jury. Under this view of the facts, defendant was driving his car at 40 miles an hour, veered across a corner of, and struck decedent in, the safety zone. According to his own testimony, he did not see decedent until the instant he struck him. There was no evidence whatever as to any circumstance that would have made it necessary for defendant to invade the safety zone, nor was there any evidence of any obstruction in the street, or other condition which would have prevented defendant's seeing decedent standing in the safety zone. The corner was sufficiently lighted for other witnesses to see objects in the street.

The court defined gross negligence as follows: ''It is such degree of negligence or carelessness as to amount to the want of slight diligence, an entire failure to exercise care or the exercise of so slight a degree of care as to justify the belief that there was an entire indifference to the property and persons of others and a conscious indifference to all consequences.'' Defendant does not question the correctness of this definition. His argument that his conduct, as described by the People's witnesses, does not measure up to this definition of gross negligence is again an argument on the facts. It is a question of fact for the jury to determine whether conduct in a given situation evidences negligence and, if it does, whether it is gross, ordinary, or slight negligence. We could interfere with the finding of the jury only if we were convinced that freedom from gross negligence was so clearly established by the evidence that reasonable minds could not differ upon the question. (*Malone* v. *Clemow,* 111 Cal.App. 13 [205 P. 70].) Not only was the conclusion of the jury a reasonable one, but in our opinion it was the more reasonable. There is not the least doubt in our minds that upon the state of facts which formed the basis of the verdict, appellant was guilty of gross negligence. Even if he had been driving at 25 miles an hour, as he claimed, our conclusion would be the same. It appears from his own testimony that he was driving past the safety zone at a speed which placed all the responsibility for avoiding injury upon persons who might be occupying the street at that point. He was not slowing down, nor did he have control of the car that would have enabled him to stop quickly if it should become necessary to do so in order to avoid an accident. He should have been especially cautious in approaching

the safety zone and should have anticipated the presence of persons waiting for a car. He did not do this, but took a chance that no pedestrian would get in his way. His failure to see the pedestrian was unexplained. There are, of course, conditions in which it is difficult for motorists to see pedestrians on the streets, but the conditions here were not shown to have been unusual, and the only reasonable explanation of defendant's failure to see the decedent is that he was not exercising even the slightest degree of care.

The judgment and order denying new trial are affirmed.

Desmond, P. J., and Wood, J., concurred.