[Crim. No. 4039. Second Dist., Div. Three. Feb. 14, 1947.]

THE PEOPLE, Respondent, v. BERNICE WILSON, Appellant.

Joseph W. Ryan for Appellant.

Robert W. Kenny, Attorney General, Gilbert F. Nelson, Deputy Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

SHINN, J.—Defendant appeals from judgments of conviction of three charges of negligent homicide, and from an order denying her a new trial.

In count I of the information, defendant was charged with the crime of manslaughter, a felony, committed as follows: "That the said Bernice Wilson, on or about the 25th day of September, 1945, at and in the County of Los Angeles, State of California, did wilfully, unlawfully and feloniously kill, without malice, one Marie M. Peeler, a human being, while in the operation of a vehicle and with gross negligence." Counts II and III were the same except for the substitution of the name of Gussie Solomon in count II and John Nelis in count III. Section 192 of the Penal Code, as amended in 1945 (Stats. 1945, ch. 1006, § 1), reads, in part, as follows:

"Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds:

"3. In the driving of a vehicle—

"(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

"(b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

"This section shall not be construed as making any homicide in the driving of a vehicle punishable which is not a proximate result of the commission of an unlawful act, not amounting to felony, or of the commission of a lawful act which might produce death in an unlawful manner."

Under section 193, violation of subsection 3(a) is punishable either by imprisonment in the county jail for not more than one year or in the state prison for not more than five years; the jury may recommend punishment in the county jail, and if such recommendation is made the court shall not sentence the defendant to imprisonment in the state prison. Violation of subdivision (b) of subsection 3 is punishable by imprisonment in the county jail for not more than one year.

The basis of the principal grounds of the appeal is that the driving of a vehicle in a negligent, but not grossly negligent, manner, which causes the death of a human being, has not been and may not be made a criminal offense, for the reason that ordinary negligence does not amount to criminal negligence as the latter term is well understood in law. The same argument runs throughout defendant's briefs as to the power of the Legislature to denounce as a crime the acts specified in subsection 3(b), as to the proper interpretation of the same, as to the propriety of several instructions that were given, and as to the sufficiency of the evidence to prove the commission of a criminal act. This basic proposition is unsound, and all the claims of error depending upon it are untenable. Section 20, Penal Code, reads: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." One of defendant's contentions appears to be that by force of section 20, the Legislature may not denounce as a crime any act which is not committed intentionally or with criminal negligence as the

latter term was understood in law at the time of the adoption of section 20 in 1872. Substantially the same contention was made in *People* v. *Pociask*, 14 Cal.2d 679 [96 P.2d 788], where the court quoted from *People* v. *Wilson*, 193 Cal. 512 [226 P. 5], as follows (p. 684) : ''The proper rule deducible from the cases cited in the note above referred to (note following report of *Johnson* v. *State*, 66 Ohio St. 59 [63 N.E. 607, 90 Am.St. Rep. 564], in 61 L.R.A. 277), would seem to be this : That when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life.'' And in upholding a conviction of negligent homicide for death occurring as the proximate result of injuries caused by the driving of a vehicle in a negligent manner, which was then made a crime by section 500 of the Vehicle Code (Stats. 1935, p. 2141), the court said (p. 685) : ''Exhaustive research has been made into the question of what constitutes criminal negligence under the common law and as applied under statutes in other jurisdictions. (See *People* v. *Angelo, supra* [246 N.Y. 451 (159 H.G. 394)] ; note to *Johnson* v. *State, supra* [66 Ohio St. 59 (63 N.E. 607, 90 Am.St.Rep. 564)] ; appendix to article, 'Negligent Homicide,' 25 Calif. Law Rev. 1, 37.) There is no controlling authority which would permit this court to apply any other rule or definition than that declared by the legislature and, with but slight and uncontrolling exception, recognized and followed in this state.''

Section 192, subdivision 3(b), should be read with Penal Code section 195, subdivision 1, reading : ''Homicide is excusable in the following cases : 1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent.'' A homicide proximately resulting from the commission of an unlawful act not amounting to felony, without gross negligence, or from the commission of a lawful act which might produce death in an unlawful manner, but without gross negligence, would not be excusable under section 195,

and the act that caused the death would be an act of criminal negligence within the meaning of section 20. In harmonizing the three sections it must.be considered that it is implicit in subsection 3(b) that the commission in a negligent manner, but without gross negligence, of a lawful act which might produce death would be the commission of the act in an unlawful manner, since the act, if committed with usual and ordinary caution and without any unlawful intent, would be excusable under section 195.

It is contended that subdivision (b) is void for uncertainty, in that a defendant charged thereunder would not be apprised of the particular acts of which he was accused. We find no uncertainty in the section. The terms ''lawful'' and ''unlawful'' are well understood in law. Defendant says in her brief that an act, to be unlawful, need not be punishable as a crime, and she cites authorities to support her statement. It is a correct statement. An act which is expressly forbidden by law is an unlawful act and an act committed in a manner forbidden by law is committed in an unlawful manner. The information charged the offense of manslaughter in the language of the statute and accused defendant of causing the deaths of the three named persons while in the operation of a vehicle and with gross negligence. The information was sufficient to allow proof as to how the vehicle was operated and to establish facts under which defendant might be shown guilty of one or more of the acts or omissions which are elements of the offense of manslaughter under subsection 3. Defendant was required to meet evidence tending to show that the deaths proximately resulted from the commission by her of an unlawful act or from the commission of a lawful act which might produce death, either with or without gross negligence. (*People* v. *Dobbs,* 70 Cal.App.2d 261 [161 P.2d 46].) She was sufficiently apprised of the acts with which she was charged and which constituted the offense.

It was the theory of the prosecution that defendant drove her car in violation of certain sections of the Vehicle Code and with gross negligence. Instructions were given which were appropriate in a trial of these issues. Defendant assigns the giving of these several instructions as error, and a discussion of them necessitates a general statement of the evidence. Shortly after 10 o'clock on the night of September 25, 1945, Mrs. Marie Peeler was crossing Vermont Avenue from west to east at 76th Street, in the northerly unmarked crosswalk,

when she was struck by an automobile driven by a 16-year-old boy, Norman Schumow, traveling in a northerly direction. Double streetcar tracks extended along Vermont Avenue and after the accident Mrs. Peeler was lying at the northerly line of the unmarked crosswalk about twelve or fifteen feet east of the railway tracks; she had suffered a fractured arm in the accident, was moaning and trying to speak but was not wholly conscious. A number of people gathered about her in a circle some six or seven feet in diameter and one of them examined her and found her alive. A blanket and a jacket were placed over her and a purse was placed under her head. A man stood out in the center of the street directing traffic. Quite a crowd of people had gathered and they were being ordered to step back out of the street, when, as described in the evidence, there was a flash of light and an automobile approaching from the south ran directly through the center of the crowd, knocking people in all directions. This was defendant's car; it did not change speed from the time it entered the intersection until after the people were struck, and it was stopped 85 feet north of the north curb line of 76th Street. Defendant got out of her car, returned to the scene and said, "O, my God, did I do this?" Ten people were injured, three of them fatally. Lester P. Schmidt, who was in the crowd, testified that almost immediately after the accident he walked over to where Mrs. Solomon and Mrs. Peeler lay, and that they were then dead. Officers soon arrived, measured the distance from the point of the accident to the point where defendant's car stopped, and testified that it was 85 feet. Mrs. Peeler's body was carried from a point where it lay after the first accident to a point just to the rear of defendant's car after it was stopped. The driving lights of defendant's car were on and she testified that she could see through the intersection and the crosswalk. There was no evidence that anything obstructed her view ahead of her car as she approached and crossed the intersection. She testified that she was driving about 25 miles an hour and that she observed no one in the street until she was about ten feet north of the southerly crosswalk, when she started to swerve to the left and then applied her brakes, which were in good condition. Light standards bearing two lightly frosted globes were at each of the four corners of the intersection, a similar standard was situated in the center of each block and at the time of the accident

each was lighted. There were semaphore type signals at each of the four corners of the intersection. At the time of the accident they were in operation, flashing a light intermittently through an eight-inch yellow or amber globe. There were buttons that might be pushed by pedestrians which turned on red lights as signals to north and southbound traffic on Vermont. There was a marked crosswalk at the south boundary of the intersection. At the northeast corner of the intersection there was a brightly lighted store and there was evidence that the visibility at the point was good. The weather was clear and dry. One witness, who had ridden a scooter following the Schumow car, stated that the weather was very clear and that he could see in front of him for approximately half a mile. An officer who arrived after the accident testified that he had no difficulty seeing the crowd of people when he was half a block away.

 Instructions were given which correctly defined the terms ''negligence'' and ''gross negligence'' and the jury was further instructed as follows: ''If you are satisfied beyond a reasonable doubt that the defendant committed the acts charged in the information but that the acts committed by the defendant were not accompanied by gross negligence but by ordinary negligence, it is your duty to so find in your verdict.'' Defendant states: ''Nowhere in section 192 or 193 Penal Code, as amended, do we find legal support of the statement that ordinary negligence is sufficient to warrant the jury in finding the defendant guilty of the offenses charged.'' As already stated, the negligent driving of a vehicle is an unlawful act and an element of the misdemeanor offense. In the same connection defendant cites *People* v. *Hurley,* 13 Cal.App.2d 208 [56 P.2d 978], which in turn cites *People* v. *Driggs,* 111 Cal.App. 42 [295 P. 51], both to the effect that ''in order to constitute criminal negligence there must enter into the act some measure of wantonness or flagrant or reckless disregard of the safety of others, or wilful indifference. If no one of these elements enters into the act, the person charged cannot be held guilty of criminal negligence.'' These cases are cited in defendant's briefs under the heading of insufficiency of the evidence, but they furnish the basis of the contention that the instructions on negligence should not have been given. This is another phase of the argument which we have already considered. Moreover, the

holding in the two cited cases was expressly disapproved by the court in *People* v. *Pociask, supra,* 14 Cal.2d 679, at 684.

It is claimed that it was error to instruct with reference to ordinary negligence, for the additional reason that the information charged only the commission of gross negligence. It is said that the question of ordinary negligence was not within the issues. *People* v. *Okada,* 14 Cal.App.2d 660 [58 P.2d 967], and *People* v. *Banks,* 17 Cal.App.2d 508 [62 P.2d 160], cited by defendant, are not in point. The prosecutions there were under informations charging that the defendants "did wilfully, unlawfully and feloniously operate a vehicle, to wit, an automobile, in a negligent and unlawful manner, causing death," etc. Section 500 of the Vehicle Code defined negligent homicide to consist of the acts charged by the information or death caused "in the commission of an unlawful act not amounting to a felony." The court instructed the jury that in order to convict it was not necessary to find the defendant guilty of driving the vehicle in a negligent manner, but that he could be convicted if it was found that death resulted from the commission of an unlawful act not amounting to a felony, although that phase of the offense was not charged in the information. This was held to be reversible error. In the present case, as we have seen, the charge as laid embraced the driving of a vehicle in a negligent manner.

 The jury was instructed as follows:

"You are instructed that it is unlawful to drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on and the surface and width of the highway and in no event at a speed which endangers the safety of persons or property. Section 510 Vehicle Code."

Section 510 of the Vehicle Code reads as follows:

"No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

Conduct in violation of section 510 would necessarily be unlawful conduct. It is said in appellant's opening brief: "We have been unable to find any case wherein a criminal prosecution was had under section 510 Vehicle Code." For the reasons heretofore stated, violation of this section would

have been unlawful even though not penal, and the instruction was called for. ▮ It was also proper to instruct in the language of section 477(2) of the Vehicle Code, that "When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution," and in the language of section 562, Vehicle Code, that "(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. (b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

▮ Defendant criticizes the giving of the latter instruction because it was not shown that the persons injured were crossing the roadway. No harm could have come to defendant from this instruction. The right of way rule which it states operated in her favor.

▮ Most of the arguments above noted are again advanced under the heading of insufficiency of the evidence. Here defendant reverts to the original proposition that the crime of manslaughter cannot be founded upon the negligent operation of a vehicle. Defendant cites *People* v. *Young*, 20 Cal.2d 832 [129 P.2d 353], and several later cases which involved prosecutions under section 500 of the Vehicle Code, as amended in 1941 (repealed in 1943.) That section provided: "When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle with reckless disregard of, or wilful indifference to the safety of others, the person so operating such vehicle shall be guilty of negligent homicide, a felony. . . ." The cited cases obviously are not in point in a prosecution for felony manslaughter or misdemeanor manslaughter in the operation of a vehicle under section 192 as it now stands.

▮ It is unnecessary to review the evidence for the purpose of pointing out wherein it was sufficient to justify a finding that defendant was not driving in the exercise of ordinary care or in the fulfillment of her duties as defined in the instructions. It is not surprising that the jury determined from the evidence that in causing the death of three people and injury to seven others, defendant was not driving with the care usually exercised by persons of ordinary prudence and caution. There was nothing to obstruct her vision or to excuse

her failure to see the crowd in the street ahead of her. It was an inescapable conclusion that she failed to see them in time to avoid them only because she was paying little or no attention to what lay ahead of her. (*People* v. *Leitgeb,* 77 Cal. App.2d 764 [176 P.2d 384].)

Another of defendant's points is that the corpus delicti was not established, for the reason that there was no proof that the three persons met death through the accidents. Defendant says: ''We agree that the three persons named in the information are dead. How they came to their death we do not know, except that they came to their death (at least the two names in counts II and III) subsequent to the first accident, in which this defendant and appellant had nothing to do.'' As to the death of Mrs. Peeler, it was stipulated that she ''died as the result of the combination of injuries sustained when she was struck by the automobile driven by Schumow, and the second car which was involved in that accident; that it was the combination of injuries suffered from both which resulted in her death.'' As to decedents Gussie Solomon and John Nelis, it was stipulated that they died as a result of injuries sustained ''in the second accident, in which the defendant was involved.'' In view of these stipulations the trial proceeded as if the deaths of two of the victims were caused by their being struck by defendant's car, and the death of the third by injuries inflicted by defendant's car and that of Schumow. Defendant now contends that her counsel at the trial had no authority to enter into said stipulations. No precedent is cited which supports this contention and we are of the opinion that it is without merit. Defendant was present and heard her attorney enter into the stipulations. She at no time objected thereto nor sought to be relieved therefrom, nor did her attorney make any such request in her behalf. No contention is advanced that the stipulations were not in accordance with the facts, nor is it suggested that it would have been to plaintiff's advantage for the prosecution to call as witnesses the coroner or autopsy surgeon to give testimony as to the causes of deaths, or the relatives or friends of the deceased persons to testify to identifications of their dead bodies. It would appear that the stipulations were made in the exercise of good judgment on the part of defendant's attorney and that defendant was not prejudiced thereby. But however this may be, defendant is in no position to question

the authority of her attorney. When the stipulations were made in her presence and the terms and import of them were fully understood by her, their binding force did not rest upon the authority of the attorney derived from the attorney and client relationship, any more than it did upon her consent thereto, which was evidenced by her silence. An attorney has implied authority to enter into stipulations affecting procedure in the trial, as distinguished from those which go to the cause of action itself (*People* v. *Hanna,* 36 Cal.App. 2d 333 [97 P.2d 847] ; 5 Am.Jur. p. 318), and a defendant may not assert on appeal procedural rights which he waived at the trial. (*People* v. *White,* 20 Cal.App. 156 [128 P. 417] ; 23 Cal.Jur. 816.) As already stated, there was testimony of witnesses to the accident that after being struck by defendant's car two of the victims lay dead in the street and that the third lay injured. The evidence, with the stipulations, was sufficient to prove the deaths.

 Another point is that inasmuch as defendant was convicted of misdemeanors, the verdicts deprived the court of jurisdiction to pronounce judgments, and that the judgments should be reversed with a direction that the charges be dismissed. Section 17 of the Penal Code reads as follows: ''A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor. When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison.''

 It was charged in each count of the information that defendant ''did wilfully, unlawfully, and feloniously kill, without malice, [the person named in the information], a human being, while in the operation of a vehicle and with gross negligence.'' This was a sufficient accusation of manslaughter, a felony. (*People* v. *Dobbs,* 70 Cal.App.2d 261 [161 P.2d 46].) The superior court is the only one that has jurisdiction of prosecutions for offenses that may be punished by imprisonment in the state prison. (*People* v. *Lewis,* 4 Cal. App.2d Supp. 775, 779 [37 P.2d 752].) In each count of the information defendant was charged with the commission of a felony, and under each count she was convicted of a misdemeanor. The single offense of manslaughter encompasses acts committed with gross negligence under subsection 3(a),

and the same acts committed without gross negligence under subsection 3(b). There could be but one prosecution and one judgment, for, although different punishment is prescribed for the different degrees of the offense, subsections 3(a) and 3(b) define a single offense.

■ Defendant assigns as error the failure of the court of its own motion to give an instruction that evidence of oral admissions of the defendant should be viewed with caution. There was no necessity for such an instruction. One of the officers who arrested defendant at the scene of the accident testified that on the way to the station defendant stated to another officer in the car that she was driving at 35 or 40 miles an hour as she came up Vermont Avenue and that she struck some of the persons in the street as she turned out to avoid hitting others. Defendant testified that she was driving at about 25 miles an hour, but when questioned as to her statement to the officers she admitted having stated that she had been driving 35 or 40 miles an hour, but explained that she meant that she had been driving at that speed on the way up from the beach and not in the vicinity of the accident. There was no contradiction by defendant of the testimony of the officer, nor was there other evidence as to any oral admission which she denied having made.

Defendant was given a fair trial, in which no error occurred. The treatment which she received at the hands of the jury was by no means inconsiderate. The judgments and order denying motion for new trial are affirmed.

Desmond, P. J., and Wood, J., concurred.