[Crim. Nos. 4477, 4478. Second Dist., Div. One. Sept. 18, 1950.]

THE PEOPLE, Respondent, v. RUTH BOYCE, Appellant.

(Two Cases)

Ruth Boyce, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WHITE, P. J.—We are here confronted with two appeals (Superior Court case numbered 127562—numbered in this court 4477—hereinafter referred to as case "A," and Superior Court case numbered 116216—numbered in this court 4478—hereinafter referred to as case "B").

As to case "A" defendant was accused in an information filed by the District Attorney of Los Angeles County containing three counts of the crime of grand theft. It was also alleged therein that defendant had suffered a prior conviction upon a charge of issuing checks without sufficient funds, a

felony (Pen. Code, § 476a). Defendant duly entered her plea of not guilty and not guilty by reason of insanity. She denied the prior conviction charged against her. The cause proceeded to trial before a jury, resulting in a verdict of guilty as to the offense charged in Count I of the information and not guilty of the crimes charged in Counts II and III. Following a subsequent trial on the plea of not guilty by reason of insanity, the jury returned a verdict finding the defendant was sane at the time the offense charged in Count I was committed. The allegation of a prior conviction was found to be true. Defendant's motion for a new trial and for arrest of judgment was denied. From the judgment of conviction, the order denying her motion for new trial and for arrest of judgment, defendant appeals.

In case "B" the record reflects that defendant had previously been convicted on two counts of issuing checks without sufficient funds. Prior to pronouncement of judgment proceedings were suspended and defendant was placed on probation. In this case the order denying her motion for a new trial was affirmed and the purported appeal from the judgment was dismissed by Division II of this court (*People* v. *Boyce*, 87 Cal.App.2d 828 [197 P.2d 842]). Subsequent to her conviction under Count I of the information in case "A," defendant was charged with a violation of the terms of probation granted her in the instant case "B." After hearing had before the court on a charge of violation of probation, the court entered its order revoking probation and judgment was pronounced sentencing defendant to the California Institution for Women, said sentence to be served concurrently with the sentence in case "A." From the order revoking probation and the judgment thereupon pronounced defendant appeals.

The attempted appeal in case "A" from the order denying defendant's motion in arrest of judgment must be dismissed because such an order is nonappealable (*People* v. *Okada*, 14 Cal.App.2d 660, 664 [58 P.2d 967]; *People* v. *Rodgers*, 94 Cal.App.2d 166, 168 [210 P.2d 71]).

We shall first give consideration to the appeal taken in case "B." The notice of such appeal reads:

"Please Take Notice that the defendant, Ruth Boyce, in the above entitled matter, hereby appeals to the District Court of Appeal, State of California, from the order and judgment revoking probation therein entered by the Superior Court on the 12th day of December, 1949."

█ While subdivision 3 of section 1237 of the Penal Code provides for an appeal "From any *order made after judgment,* affecting the substantial rights of the party" (emphasis added), the order here in question revoking probation was made before judgment and is therefore, not appealable and must be dismissed. The validity of appellant's conviction in case "B" was reviewed and upheld upon her appeal from the order denying her motion for a new trial therein (*People* v. *Boyce, supra*).

█ Coming now to the appeal taken in case "A," viewing the evidence in the light most favorable to the prosecution as we are required to do following a guilty verdict (*People* v. *Carothers,* 77 Cal.App.2d 252, 253 [175 P.2d 30]), the record discloses that Olivia Herzberg, a "personal worker" in the ministry, took appellant into her home upon the latter's release from the Los Angeles County Jail on December 20, 1948, after service by appellant of a term of imprisonment therein pursuant to and as a condition of probation granted in case "B." Miss Herzberg had in her possession several rings. At the trial of appellant a certain ring was introduced into evidence as People's Exhibit 4. Miss Herzberg testified that she recognized this exhibit as one of her diamond rings.

On December 21, 1948, appellant asked Miss Herzberg if she could wear Exhibit 4, to which the latter replied that she was averse to permitting anyone to wear her ring. Upon appellant's assurance that she would be careful of the ring and wear it only in Miss Herzberg's presence, the latter consented. Appellant wore the ring (Exhibit 4) or had it in her possession until December 24 when the complainant requested its return. Thereafter it remained in the possession of Miss Herzberg until January 3, 1949. On this date appellant asked for, received the ring and wore it during lunch, after which time the complaining witness requested its return and again placed it in her ring box. Thereafter Miss Herzberg, according to her testimony, at no time gave appellant permission to take the ring into her possession. On January 4, 1949, appellant made a trip to San Francisco. Concededly, appellant removed the ring (Exhibit 4) from the owner's ring box and took it with her to San Francisco. On January 15, 1949, appellant wrote the complainant from San Francisco, advising that she had lost the ring down the basin in her hotel and offering to make restitution for the loss in the sum of $500 but her promise in this regard was never fulfilled. The ring in question was valued at $700.

On January 11, 1949, the ring in question was pawned at a loan office in San Francisco by appellant, who received $135 in the transaction. A representative of the San Francisco loan office where the ring was pledged, and who qualified as a jewelry appraiser with 24 years experience, appraised Exhibit 4 as worth $500. Miss Herzberg next saw the ring when it was produced in court at the preliminary examination. To regain its possession she paid a representative of the San Francisco loan office $135 loaned the appellant when she pledged the ring as security for such loan to her.

Mrs. Charlotte Johnson testified that she sold the ring (Exhibit 4) to Miss Herzberg in May or June, 1947, and that prior thereto she had it for some 24 years. Miss Herzberg paid the equivalent of $275; $200 in cash and services estimated by Mrs. Johnson at $75. Mrs. Johnson's husband had the ring made and it cost about $475.

Appellant testified that she and Miss Herzberg traded rings; that Exhibit 4 was the one so traded; that the ring which was lost was a different one. That when she moved away from Miss Herzberg's residence she left a 3-stone ring as security for the one lost. The complainant however denied that she then had any of appellant's rings and denied that the latter left with her a 3-stone ring when she moved out as security for the one allegedly lost.

In her brief entitled ''Appellant's Transcript on Appeal,'' appellant urges that the evidence was insufficient to support the verdict of guilty as to Count I of the information. It is her contention that the testimony of the complaining witness was in many respects untrue. ▮ While claimed variances, inconsistencies or contradictions in the testimony of a witness may afford opportunity for a persuasive argument to the jury against the reliability of such witness, we cannot disturb the findings of the triers of fact unless we can justly conclude that the entire testimony of the witness is *per se* unbelievable. No such situation is here presented. ▮ Because reviewing judges are obviously in no position to determine the credit which should be accorded to witnesses or to weigh their testimony, our state Constitution provides that appellate tribunals are not authorized to review evidence except where on its face, it may justly be held that it is so lacking in substantiality as to be insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. ▮ And in accordance with the spirit and

intent of the constitutional mandate, the Legislature has ordained that the jury are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847) and are the judges of the value and effect of evidence addressed to them, except in those instances where it is declared by the law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). It was therefore the right of the jury to accept the testimony of the People's witnesses and to disbelieve the testimony of appellant and any other witnesses as to the circumstances surrounding the disappearance of the ring here in question, if they conscientiously felt warranted in so doing after a full and fair consideration thereof.

As pointed out to appellant in her former appeal in case "B" (*People* v. *Boyce, supra*, p. 830) her "denials of relevant portions of the testimony of the state's witnesses were disposed of by the findings of the trial court which are conclusive when supported by substantial evidence. Neither variances, inconsistencies nor contradictions in the proof of a crime are of avail on appeal. . . . (Citing cases.) The finding of guilt by the trial court will not be disturbed by the reviewing court unless it can reasonably be held as a matter of law that there was no evidence against the accused. . . . (Citing cases.)"

█ Guided by the foregoing rules it must here be held that by substantial evidence the prosecution established an unlawful taking without permission from the complaining witness of her personal property valued at more than $200, and an attempt by appellant to appropriate the proceeds obtained therefrom to her own use.

█ Appellant next urges that there existed a conspiracy on the part of certain persons to send her to the penitentiary, deprive her of counsel, and that those who would aid her by their testimony were threatened and coerced. While investigating officers and deputies in the office of the district attorney interviewed witnesses, there is no showing that they threatened any person unless they testified against appellant. While there is much surmise and conjecture indulged in by appellant concerning the claimed animosity of certain officials and others against her, there is a total lack of evidence to show the existence of any conspiracy to deprive appellant of her liberty. The same is true of appellant's contention that efforts were made to extort money from her to dismiss the charges against her, coupled with the threat that a failure

to comply with these demands would result in her being convicted though innocent, and sent to the penitentiary.

Appellant's contention that she was denied the assistance of counsel is absolutely refuted by the record, which shows that the trial judge, notwithstanding appellant's statement that she "would be happy" to represent herself, nevertheless, directed her own counsel and the public defender to "sit with the defendant and to consult with her to the extent that she desires." Insofar as appellant's claim that her witnesses were not subpoenaed is concerned, the record shows that she presented 37 witnesses in her behalf, and our attention is not directed to any witness whose presence she desired and as to whom the process of the court to compel attendance was denied her.

Equally without proof is appellant's contention that the district attorney's office deprived her of certain documents needed for her defense.

Appellant's contention that the trial judge was guilty of prejudicial misconduct in denying her motion to have the jury placed in the custody of the sheriff during the trial, denying her motion for separate trial of the three counts of the information in case "A," denial of her motion for a mistrial, permitting appellant to be interrogated while on the witness stand as to whether she had theretofore been convicted of a felony, permitting counsel for the prosecution to ask leading questions, and several other matters urged, are wholly without merit. The foregoing charges find no support whatever in the record.

Appellant's attack upon the legality of the proceedings had on the motion for a new trial in case "A" and in connection with the revocation of her probation in case "B" are also without support in the record. The proceedings on revocation of probation were had in strict conformity with section 1203.2 of the Penal Code. Appellant's assertion that her conviction in case "B" amounted only to a misdemeanor conviction cannot be sustained. While the applicable section of the Penal Code (§ 17) provides that where a crime is punishable by imprisonment in the state prison, or also by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment other than imprisonment in the state prison is pronounced, unless the court commits the accused to the California Youth Authority, in the instant proceeding no

judgment other than imprisonment in a state prison (California Institution for Women) was pronounced.

For the foregoing reasons, in superior court case numbered 127562, herein referred to as case "A," the attempted appeal from the order denying defendant's motion for arrest of judgment is dismissed. The judgment and order denying defendant's motion for a new trial in said case is affirmed.

In superior court case numbered 116216, herein referred to as case "B," the purported appeal from the order revoking probation is dismissed and the judgment pronounced therein is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 16, 1950.