[Civ. No. 9482. Third Dist. Jan. 29, 1959.]

WILEY WILSON BALTHROP, Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Appellants.

Robert W. Walker, William F. Brooks, Henry M. Moffat, Rutherford, Jacobs, Cavalero & Dietrich and Cardozo, Trimbur & Nickerson for Appellants.

Hawkins & Hawkins and Hansen, McCormick, Barstow & Sheppard for Respondent.

SCHOTTKY, J.—This is an appeal by defendants from a judgment in the sum of $75,000 entered upon a jury verdict in an action which arose out of a railroad crossing accident in which plaintiff's car was struck by defendants' train. The first trial of this action resulted in a verdict in favor of defendants, but a new trial was granted by the trial court, and this court affirmed the order granting a new trial. (142 Cal. App.2d 823 [299 P.2d 341].)

As grounds for a reversal of the judgment appellants urge: (1) that the evidence establishes that respondent was contributorily negligent as a matter of law, (2) that the court committed prejudicial error in admitting certain evidence, (3) that the court committed prejudicial error in giving certain instructions to the jury, and (4) that the court committed prejudicial error in refusing to give certain instructions.

The accident here involved occurred in Stanislaus County about 12:55 a. m., February 3, 1953, at a point where Claus Road crosses the tracks of the railroad. Claus Road runs in a generally northeast and southwest direction. The railroad line runs in a northwest to southeast direction, or in railroad language west and east. The track is on an embankment. The crossing is unobstructed. The southern approach to the crossing was protected at the time of the accident by a standard crossarm sign at the track, an advance disc type sign along the right hand or easterly side of the road, and a pavement warning sign some 390 feet south of the crossing. The night was foggy according to all the witnesses. Visibility was esti-

mated to be from zero to 40 or 50 feet for unlighted objects and 25 to 200 feet for lighted objects. Balthrop, the respondent herein, attended an evening class at Modesto Junior College. At the conclusion of the class he offered to drive a Mrs. Barringer, a coworker at the Norris-Thermador Plant, home. The two stopped for a hamburger and coffee and finally at about 11:55 p. m. Mrs. Barringer arrived at her home. Balthrop then proceeded to drive toward his home. He was familiar with the Claus Road crossing, and he knew that he would have to cross it on his way home. Several hundred feet south of the crossing Balthrop stopped and got out of his car. He noticed the pavement warning sign when he reentered his car. He also noticed the disc shaped warning sign at this time. He estimated that visibility was about 15 feet. He drove toward the crossing. He passed a vehicle coming in the opposite direction about 30 feet south of the crossing. The window on the driver's side was down. He listened for, but did not hear, a whistle. He looked for a light but did not see one. Momentarily, before the accident, he saw something and the next thing he knew "was 20 days later." He estimated that his speed at the time of the accident was 10 or 15 miles per hour. He also estimated that he could stop in 4 or 5 feet. He did not stop before crossing the track. On cross-examination he testified that the first time he looked up and down the track was when he was 10 or 12 feet from it. As he said, this was the first time he could see it.

The train was proceeding northwest, or in railroad terms west. It consisted of a diesel engine with a power unit and eight cars. The engine was equipped with a stationary and an oscillating light, an automatic bell and a two way horn or whistle. The fireman and the engineer both asserted that the bell was working. They both testified that the whistle was sounded about 1 mile south of the crossing and continuously thereafter until the collision occurred.

There was some testimony, though contradicted, that Balthrop was intoxicated. There was testimony from a witness that he had passed Balthrop's car some 30 feet after he had crossed the tracks. This witness testified that when he had stopped at the tracks he saw no lights and heard no whistle. Other facts appearing in the record will be set forth in the course of this opinion.

Appellants' first contention is that respondent was guilty of contributory negligence as a matter of law. We do

not agree with this contention. ▮ As was stated in *Anthony* v. *Hobbie*, 25 Cal.2d 814, at page 818 [155 P.2d 826]:

". . . The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion."

And as stated in *Startup* v. *Pacific Electric Railway Co.*, 29 Cal.2d 866, at page 871 [180 P.2d 896]:

"There was evidence that the driver of the automobile in which plaintiffs were riding took some precautions before crossing the tracks, and 'where it is shown that a [driver] has exercised some care, the question whether or not the care actually exercised was due and sufficient will always be a matter for determination by the jury.' (*Koch* v. *Southern California Ry. Co.*, 148 Cal. 677, 680 [84 P. 176, 113 Am.St. Rep. 332, 7 Ann.Cas. 795, 4 L.R.A.N.S. 521].) It was therefore error for the court to instruct the jury that the driver of the automobile was guilty of negligence as a matter of law."

▮ We believe that the record in the instant case shows that respondent driver exercised some care and that the question of "whether or not the care actually exercised was due and sufficient" was a question for the determination of the jury. It was a foggy night; visibility was obscured. Balthrop was driving slowly. He testified that he looked and listened. This is certainly evidence of some care and on the rule of the cited case the question would be a matter for the jury to determine. Appellants contend that one must look and listen and stop if necessary. Appellants particularly rely on *Lazzarotto* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 157 Cal. App.2d 455 [321 P.2d 29], in which plaintiff was found guilty of contributory negligence as a matter of law. In that case the plaintiff was driving home about 1 a. m. He was familiar with the railroad crossing which was unguarded. He did not look for warning signs. All the windows on his car were closed. He saw the train some 250 feet away and he could have stopped when he first saw it, but he did not for some reason. He was not listening for a warning or expecting one. However, the facts in the instant case are different. First of all visibility was obscured. Balthrop testified he was

listening and looking. The fact that he may not have looked until he was 10 or 12 feet away from the track is not indicative of no care, considering visibility was practically nil. As stated in 42 California Jurisprudence 2d, Railroads, section 169, ". . . if there is any evidence in the record that he [the plaintiff] exercised some care contributory negligence is a question, not of law, but of fact." (See also *Toschi* v. *Christian,* 24 Cal.2d 354 [140 P.2d 848].)

■ Appellants' second contention is that the court erred in admitting in evidence over appellants' objections certain letters from the Public Utilities Commission to appellant railroad, which letters contained recitations to the effect that the crossing was deemed dangerous and that there should be an automatic signal installed at the crossing. The letters were offered for the limited purpose of showing that appellant railroad had notice that the crossing was hazardous because of increased traffic conditions; and after they were read to the jury, the court instructed the jury as follows:

"THE COURT. Ladies and gentlemen of the jury, I want at this time to admonish you again that the documents which Mr. McCormick has read to you have been admitted in evidence, not to prove the truth of any fact or facts therein contained, but solely and only to show that the Defendant Atchison, Topeka and Santa Fe Railway Company had been put upon its inquiry concerning the potentially hazardous character of this particular crossing and traffic conditions at the crossing."

In the instant case two theories of negligence were pleaded. One was that the company was negligent in its maintenance of the crossing. The standard of care required by the railroad would depend on the conditions at the crossing. No contention was made that the construction of the crossing itself was dangerous. Rather it was the theory of the respondent that the increased traffic conditions at the crossing because of the reopening of the Norris-Thermador plant necessitated the installation of some type of warning device other than those maintained. The letters would have been properly admissible to show that the appellant railroad had notice of the increased traffic conditions even though the letters contained hearsay and opinion matter, for as stated in *Jensen* v. *Southern Pac. Co.,* 129 Cal.App.2d 67 (hearing denied), at page 75 [276 P.2d 703]:

"The applications of the city of Burlingame to the Utilities Commission for an order requiring the railway company

to install and maintain gates at this crossing, including Broadway, were, as stated by the court 'not offered for the truth of the statements contained therein, only to show that the city of Burlingame had notified the railroad that they deemed the crossing to be dangerous.' Thus limited, they tended to show that the defendant company had been put upon its inquiry concerning the potentially hazardous character of this particular crossing. As such, they seem relevant.

''The company says that it was chargeable with such knowledge; hence, this evidence was unnecessary, and therefore irrelevant, citing *Martindale* v. *Atchison, T. & S. F. Ry. Co.*, 89 Cal.App.2d 400, 412 [201 P.2d 48]. In that case the defendant had admitted knowledge of previous accidents mentioned in the proffered letters. In the instant case, there was no similar admission on the part of the defendant. Indeed, it denied the existence of any unusual hazard at the Broadway crossing. Moreover, while the defendant was probably chargeable with knowledge of the physical character and condition of its property, it was not necessarily chargeable, to the same degree at least, with knowledge of traffic conditions, including the volume and congestion of traffic at this crossing, which contributed materially to the hazardous condition in question. Thus, it has been held that when the existence of danger is due to causes other than the activity of the defendant, it is necessary to prove that he had actual or constructive notice of that danger. (*Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 806 [117 P.2d 841].) The degree of care necessary to constitute ordinary care is measured by reference to the circumstances of danger and risk known to the obligor; hence 'it is usually . . . permissible to prove any fact, *known to such person at the time,* which would have a reasonable tendency to increase or decrease the risk and danger of a particular course of action.' (*Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131, 136 [85 P. 152, 5 L.R.A.N.S. 1059]; (emphasis added.) In *Marchetti* v. *Southern Pac. Co., supra,* 204 Cal. 679, 684 [269 P. 111], the court attached significance to the fact that the city authorities had requested the railway company to install an automatic crossing signal. Moreover, a party is not limited to making out a mere prima facie case. (*People* v. *McMonigle,* 29 Cal.2d 730, 742-743 [177 P.2d 745].)

''Under the circumstances, we see no sound reason why plaintiffs should be precluded from showing that defendant had in fact been put upon its inquiry concerning such hazardous condition.''

However, the relevance of the notice evidence which the letters were introduced to show depended first on a showing of what the traffic conditions at the crossing were. There was no evidence in the record to indicate whether 10 or 1,000 cars a day used the crossing. The trial court instructed the jury after the letters were read to them that they were admitted to show that the defendant railroad ''had been put on its inquiry concerning the potentially hazardous character of this particular crossing and traffic conditions at the crossing.'' Without a showing of the traffic conditions, the letters were irrelevant on the issue. It is permissible to show that a person has notice of a fact, but before notice can be shown there must be evidence of the fact itself. Therefore the court erred in admitting the letters in evidence.

The error was compounded because the court also gave the following instruction.

''It is the duty of a railroad company to exercise reasonable care in warning and for the safety of travelers on a public highway that crosses the tracks of the company.

''That duty is not necessarily fulfilled by complying with regulations issued by the Public Utilities Commission which have been read to you.

''Such regulations prescribe only the minimum measure of care that will satisfy the Commission.

''Whether or not compliance with such regulation at the crossing here in question amounted to reasonable care is a question that you must decide according to the following principle:

''Any measure that would have been taken by reasonably prudent railroad management to protect travelers on the highway in question, and at the time in question, from the dangers of the crossing, were measures required of the defendant railroad company.''

No regulations of the Public Utilities Commission were received in evidence, nor were any regulations read to the jury at any time. Later in the instructions section 7604 of the Public Utilities Code which required the ringing of a bell or whistle prior to the time a train proceeds through a crossing was read.

Appellants cite *Staggs* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 135 Cal.App.2d 492, 503 [287 P.2d 817], where the court said: ''. . . The instruction . . . is inapplicable . . . The jury had a right to assume that the court deemed it to be applicable to the issues being tried or the court would not have so

instructed them. The giving of that instruction may have misled and confused the jury . . . It was therefore prejudicial error.''

▉ The general rule is that it is error for the trial court to instruct upon matters which have no support in the evidence. As stated in *Rodenberger* v. *Frederickson,* 111 Cal.App.2d 139, at page 142 [244 P.2d 107] : "Unless instructions find support in the evidence they should not be given, and when there are no supporting facts they may mislead the jury."

▉ In the case of *People* v. *Okada,* 14 Cal.App.2d 660 [58 P.2d 967], cited by appellants, the trial court instructed the jury as to the speed limits in business and residential districts. Upon appeal, this instruction was held to be error since there was no evidence in the record as to whether the area in question had been signposted as to the speed limits applicable in a business or residential district. At page 664, the court said: "Instructions as to speed in a business district were therefore improper herein without proof from which the jurors might infer that the district where the accident occurred was in fact a business district." (See also *Clark* v. *Pamplin,* 147 Cal.App.2d 676 [305 P.2d 950].)

Appellants argue that the error in giving the instruction was prejudicial because of the fact "that in the evidence were Plaintiff's Exhibits 23-A, 23-B and 23-E—all of which were letters written on the official stationery of the Public Utilities Commission—and since they 'had been read' to the jury it is very probable that the jury understood from the giving of this instruction that the statements and directions contained in said Exhibits were 'regulations' of the Public Utilities Commission and that, accordingly, under this instruction the minimum duty of care required to be exercised by the Santa Fe was complied with only by the installation of automatic signals—as requested by the Commission in said Exhibits." Appellants quote the statement in *Staggs* v. *Atchison, Topeka & Santa Fe Ry. Co., supra,* that the jury had a right to assume that the court deemed it to be applicable to the issues or the court would not so have instructed them.

Respondent in reply argues that the instruction was applicable and not misleading; that "the reference to 'regulations' in the instruction obviously had reference to section 7604 of the Public Utilities Code which was read to the jury and which did apply and which did prescribe a minimum standard of care."

We are unable to agree with respondent as we believe that

the jury, having been instructed that it was the duty of appellants to comply with the regulations of the Public Utilities Commission "which have been read to you," would be more likely to regard the instruction as referring to the statement of the commission in the letter that had been read to them to the effect that automatic signals were warranted at the crossing as a regulation of the commission, than they would to regard it as referring to the provisions of section 7604 of the Public Utilities Code which was not read to them until later. We, therefore, conclude that the giving of the instruction was error.

Ordinarily it is not prejudicial or reversible error for a trial court to instruct upon matters which have no support in the evidence. But in a case which is extremely close and where, as in the instant case, there is strong evidence upon which a finding of contributory negligence on the part of respondent could be based, we believe that the giving of the instruction requires a reversal of the judgment. We are fortified in this conclusion by the fact that in the former trial in which the letters were not introduced and no such instruction was given, and where the evidence as to the negligence and contributory negligence was substantially the same as in the instant case, the jury returned a verdict in favor of appellants.

Appellants next contend that the court erred in instructing on the doctrine of imminent peril. The rule is that one who is without negligence on his part, who is suddenly confronted with an unexpected imminent danger, is not required to exercise the same amount of care as one who acts after a careful deliberation. Where a person is confronted with an immediate choice between alternative courses of conduct he is not necessarily negligent if he makes what turns out to be a wrong choice if he took one of the courses a reasonable man would have taken. (Harper & James, The Law of Torts, § 16.11; *Gamalia v. Badillo,* 53 Cal.App.2d 375 [128 P.2d 184].) In the deposition of the fireman Cyr, the statement is made that he was watching Balthrop's vehicle until just before the collision. He said that the car got down pretty slow and it never entered his head that he could have gotten hit. From this testimony one could infer that Balthrop could have stopped before he would have been on the track. If so, and if we also consider the evidence contained in the report of the highway patrol officer who investigated the accident that Balthrop said that he saw the train, applied his brakes and then realized he was on the tracks, and

then tried to accelerate but could not clear the tracks in time to prevent the collision, there is sufficient evidence in the record to support the instruction. Either Balthrop could have accelerated and passed in front of the train if he had not slowed by applying his brakes, or he could have stopped; but because of the low visibility he misjudged his position in relation to the tracks and by failing to realize that he could have stopped took the wrong course of action.

 Appellants next contend that the court erred in instructing the jury that the railroad did not have an exclusive right to travel over the portion of the public road covered by its tracks and also instructed that the railroad train had the right of way. Appellants contend that the instructions are inconsistent. We do not agree. The first instruction is a statement of a mere commonplace proposition within the general knowledge of the jurors that the public has a right to travel over a railroad crossing and does not contradict or conflict with the second instruction that a train has the right of way at a railroad crossing.

Appellants contend further that the court erred in not giving certain instructions offered by them. There is no merit in this contention. We have examined all of the instructions and are satisfied that with the exceptions hereinbefore noted the jury was fully and correctly instructed.

No other points raised require discussion.

The judgment is reversed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied February 24, 1959, and respondent's petition for a hearing by the Supreme Court was denied March 25, 1959.

---

*Assigned by Chairman of Judicial Council.