[Crim. No. 2838.   Third Dist.   Oct. 23, 1958.]

THE PEOPLE, Respondent, v. HELEN GALVIN HOE, Appellant.

Lewis H. DeCastle for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Defendant was charged with the crime of manslaughter as defined in section 192 of the Penal Code, it being alleged in the information that on the 18th day of March, 1957, in the county of Napa, said defendant "did willfully and unlawfully, feloniously and without malice, while engaged in the driving of a vehicle in the commission of an unlawful act not amounting to a felony, with gross negligence and while in the commission of a lawful act which might produce death, in an unlawful manner, with gross negligence, kill Huealton Wiley." She was found guilty by a jury of

the offense charged, with gross negligence. The jury recommended that punishment be in the county jail. A motion for a new trial was denied. Probation was granted. Defendant filed a notice of appeal which stated that she appealed from the judgment of conviction and from the order denying her motion for a new trial.

Appellant makes a number of contentions but her principal contention is that the evidence is insufficient to support the judgment and order. Before discussing the specific contentions of appellant we shall summarize the evidence, as shown by the record, stating it, as must be done, in the light most favorable to respondent.

Huealton Wiley died at the Parks Victory Hospital in Napa on March 23, 1957. The cause of death was extensive brain injury and hemorrhage resulting from a blow to the skull. Five days prior to the death he suffered the fatal injuries upon being struck on the head by a car being driven by appellant. The incident occurred on Highway 29 in Napa County, approximately 2½ miles from its intersection with Highway 12.

Mr. Kenneth MacLoud, the only eyewitness to the incident, testified that on March 18, 1957, while traveling on Highway 12 in Napa County he observed a 1956 DeSoto automobile, which he subsequently learned was being driven by Mrs. Hoe, traveling on this highway ahead of him. He observed that the automobile being driven by Mrs. Hoe was weaving back and forth across the road, slipping over the white line and coming close to the right-hand edge of the highway. He observed this erratic driving for approximately two and one-half miles until Mrs. Hoe pulled off on the right side of the road near a spot referred to as "Lillian's Club." She appeared to be dazed and threw her head back. Mr. MacLoud, after passing her, stopped his automobile and started to back up and see if Mrs. Hoe was in need of help. As Mr. MacLoud was backing up, Mrs. Hoe started up again and passed him. Mr. MacLoud again proceeded to follow her and stayed behind her about four car lengths. The appellant continued on Highway 12 to its intersection with Highway 29 where she came to a stop and then proceeded north on Highway 29. About a mile and one-half beyond the point where Mrs. Hoe had stopped off the highway the decedent, Huealton Wiley, had parked his automobile for the purpose of changing a flat tire. The highway at this point was a four-lane divided highway with two lanes in each direction. Each lane was approximately 12 feet wide and there was a macadamized or improved

shoulder 3 feet in width and a dirt shoulder another 3 feet in width. Mr. Wiley's car was parked off the main-traveled portion of the highway with the left wheel about 8 inches from the pavement. The left side of the car body was just off the pavement. It was approximately 5 p. m., the weather was clear and the sun was shining.

Mr. MacLoud testified that after Mrs. Hoe turned onto Highway 29 she was driving straighter than she had been and was driving about a foot from the shoulder on the right of the pavement, at a speed of from 35 to 40 miles per hour. MacLoud observed the decedent's car which was clearly visible and saw Mr. Wiley walk from the right-hand side of his car to the rear of his car. Mr. Wiley looked to the rear toward MacLoud's car and the appellant's car. When Mr. Wiley got to the left rear of his car he bent over. Just as Mr. Wiley bent or stooped over, Mrs. Hoe's car struck him. She did not strike the parked car. She passed about one foot within the pavement. Without stopping, Mrs. Hoe proceeded on down the road. Mr. MacLoud, after first stopping beside Mr. Wiley's car and signaling to a woman occupant in the back seat, proceeded down the highway in pursuit of the appellant.

After traveling approximately a mile or a mile and one-half Mr. MacLoud succeeded in overtaking Mrs. Hoe after trying to attract her attention by sounding his horn. Upon being informed by Mr. MacLoud that she had struck someone Mrs. Hoe appeared to be surprised. Mr. MacLoud then got into Mrs. Hoe's car and drove it back to the scene of the accident. Upon their arrival spectators had gathered and shortly thereafter a highway patrolman arrived on the scene.

Appellant contends that the evidence fails to establish that appellant committed an unlawful act. Respondent does not contend that appellant was guilty of a violation of Vehicle Code, section 510, the basic speed law, section 525, driving on the wrong side of the road, or section 480, commonly referred to as hit and run, but respondent does contend that the death of Wiley resulted from the act of appellant committed in violation of Vehicle Code, section 502, commonly referred to as drunk driving.

Appellant argues that the evidence is insufficient to prove that she was driving a vehicle while under the influence of intoxicating liquor. She points to her own testimony that she was suffering from an arthritic condition and that her in-

ability to walk properly or maintain her balance at the scene of the accident was due to this physical condition, rather than the fact that she was intoxicated. She points also to the testimony of her chiropractor who corroborated her testimony as to her physical condition, and to her testimony that she had only one beer and was not intoxicated. She points to other testimony and states: "It is respectfully submitted that defendant's conduct all during the day of the accident up to and after its occurrence would not justify reaching a conclusion that she was affected by the consumption of intoxicating liquor to such a degree that she could not, and, more important, did not, operate her car in a cautious, safe and prudent manner."

However, there was the testimony of two highway patrolmen that in their opinion she was under the influence of intoxicating liquor. There was also expert testimony showing that she had a concentration of alcohol in her blood of .16 per cent one hour after the accident, and the testimony of Mr. MacLoud that she was driving erratically while he was following her. Mr. MacLoud testified that the decedent, Mr. Wiley, was clearly visible; that the day was clear and the sun was shining, and there was no other traffic in the immediate vicinity at the time of the accident.

The evidence pointed to by appellant merely created a conflict upon the point of whether or not appellant was under the influence of intoxicating liquor at the time of the accident. There was sufficient evidence to support the implied finding of the jury that she was.

Appellant also contends that the evidence of the highway patrol officers that there appeared to be flesh and hair stuck to the right front headlamp frame should have been stricken. No objection was made at the time the testimony was received. A motion to strike was made at the conclusion of the prosecution's case. The testimony which appellant contends should have been stricken were answers to questions asked of Officer Evensen, as follows:

"Q. What did you find that was out of the ordinary?

"A. Well, on the right front headlight frame in the adjacent fender was appeared to be flesh and hair stuck around the frame and on the fender.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"A. Well, from the hair and flesh on the front of her car; I had reason to believe that she had hit this person."

The second answer which appellant argues should have been

stricken was given in response to a question by appellant's counsel and was directly in response to the question asked by counsel. The witness was being questioned concerning the basis upon which he arrived at the conclusion that Mrs. Hoe had been involved in an accident and had struck the decedent. He was asked by counsel as follows:

"Q. Well, by what other means did you know it?"

The witness answered the question, stating as follows:

"A. Well, from the hair and the flesh on the front of her car; I had reason to believe that she had hit this person."

The said evidence having been received without objection, and part of it in response to a question by appellant's counsel, we believe that appellant waived any objection to its reception. ▮ As was stated in *People* v. *Caritativo*, 46 Cal.2d 68, at page 73 [292 P.2d 513]:

"The rule is settled that where a defendant deliberately permits evidence to be given without objection in the first instance and then moves to strike it out on grounds readily available at the time the evidence was offered, he waives such objections to the reception of the evidence. (*People* v. *Long*, 43 Cal. 444, 446; *People* v. *Rolfe*, 61 Cal. 540, 542.)"

▮ So even if such evidence was inadmissible, which we do not hold, the motion to strike came too late and was properly denied.

There is no merit in the contention of appellant that the trial judge and the district attorney were guilty of misconduct. During the examination of Mr. MacLoud appellant's counsel objected to a question concerning a statement of the appellant made to the witness. Appellant's counsel contended that the corpus delicti had not been established. During a colloquy between counsel and the judge the parties disagreed as to the testimony of the witness. We have read this portion of the record carefully and are convinced that nothing was said by either the trial judge or the district attorney that could have resulted in any prejudice to appellant.

▮ Appellant argues that the court erred in instructing the jury that "The proximate cause of an injury or death is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury or death and without which the results would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the injury or death." Appellant contends that "This instruction relieves the prosecution of that burden of proof and assumes a homicide because a death

occurred without regard to the cause." There was no error in giving this instruction. A similar instruction was approved by this court in *People* v. *Mead*, 126 Cal.App.2d 164, 177 [271 P.2d 619], as containing the standard definition of proximate cause. The instructions in a case must be read as a whole, and in the instant case the court also instructed the jury that before they could find appellant guilty they "must find that the defendant's misconduct was the cause of death for there must be a causal connection between commission of the unlawful acts and death."

Finally, appellant contends that there was not sufficient evidence to prove the death of decedent to have been the proximate result of the commission of an unlawful act by appellant. Section 192 of the Penal Code prescribes the offense of manslaughter in the driving of a vehicle, as follows:

"3. In the driving of a vehicle—

"(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

"(b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence."

The statute then provides:

"This section shall not be construed as making any homicide in the driving of a vehicle punishable which is not a proximate result of the commission of an unlawful act, not amounting to felony, or of the commission of a lawful act which might produce death in an unlawful manner."

Whether the misconduct proven constitutes gross negligence or ordinary negligence it must appear that it was the proximate cause of the death. In testing the record for the presence of proximate cause we are not concerned with appellant's conduct preceding her approach to the place where the death occurred. At the time and just before her automobile struck decedent she was driving straight and about one foot within the limit of the right-hand travel lane. Although she testified she did not see decedent's car parked at the side of the road and did not see decedent, she is chargeable with what was then visible to her had she exercised care and looked. She is chargeable, then, with seeing the position in which decedent's car had been parked with respect to its proximity to her path of progress and with seeing decedent pass toward the rear of

his car from the right-hand side of it and then behind the car in a manner indicating his approach to her proposed path. The jury could find that she could reasonably anticipate he might go into the area to the left of his car and that if he did there was a reasonable probability that unless she took evasive action open to her, injury to decedent might result. Under these circumstances the jury could find that a reasonably prudent person would have either slowed down or pulled enough to the left to create a margin of safety or have done both of these things, that her failure to do so was negligence and that this negligence was a proximate cause of decedent's death. It matters not that decedent's conduct was grossly negligent and a proximate cause of his death. It cannot, however, be said that decedent's conduct was the sole proximate cause of his death. It results, therefore, that appellant was guilty of manslaughter in the driving of a vehicle. The record supports the jury's verdict in that respect.

It is argued further that the evidence will not support the jury's finding of gross negligence and in support of that argument it is insisted that the proximate cause of death, that is, appellant's failure to exercise care to avoid injuring decedent, will not in itself support a finding of gross negligence. Conceding that to be true, that is, that the only conduct of appellant material here was that immediately preceding the instant her car struck decedent, yet under the statute that negligence occurred in the commission of an unlawful act with gross negligence. The jury could find that her conduct in driving while intoxicated and in failing to see either decedent or his car as she approached was grossly negligent conduct.

The judgment and the order appealed from are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 21, 1958.