[Crim. No. 8071. Second Dist., Div. One. May 7, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES VINCENT DeSPENZA, Defendant and Appellant.

Thomas Higgins, Jr., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with manslaughter in violation of section 192, Penal Code, a felony; gross negligence in the operation of a motor vehicle was alleged. The trial court found him to be negligent, "the negligence not being of a gross variety"; adjudged him guilty of manslaughter, a misdemeanor (§ 192, subd. 3(b)) ; and placed him on probation. Defendant appeals from the judgment and order denying his motion for a new trial.

It is undisputed that around 2 o'clock in the morning of August 25, 1960, defendant, driving a Fiat automobile, ran into the left rear side of a Chevrolet flat-bed truck parked at the side of the road on Crenshaw Boulevard near the intersection of Thoreau; Mrs. Hathaway, a passenger in defendant's vehicle, died as a proximate result of the collision. The evidence and all inferences reasonably to be drawn therefrom

viewed in a light most favorable to the judgment reveal the following.

The truck was parked 28 feet north of the intersection on the easternmost side of Crenshaw in the third traffic lane; its wheels were about 2 inches from the curb. The width of the back of the truck was 84 inches; the bed sat 22 inches off the ground. There were no lights burning on the truck but there were two reflectors and two reflector taillights on the rear end of the flat bed. The reflectors were approximately 3 inches in diameter and were mounted 6 inches from each side; the taillights, approximately 3½ inches in diameter, were set 4 inches from each side. Twenty-three feet north of the point of impact directly in front of the truck was a street light; it consisted of a mercury vapor lamp on a standard lamp post set in a 12-foot island on the east side of Crenshaw, one light hanging over the service road and the other hanging over the Crenshaw area. Where the truck was parked Crenshaw was a well-illuminated street. There was no fog, the street was dry and visibility was very clear. The witness Newby, who had been driving one-half block behind defendant in the lane next to the divider (defendant was traveling in the lane to Newby's right), saw the parked vehicle (truck) before the collision; Officer Duggan, proceeding north on Crenshaw to the point of impact, was able to see both defendant's car and the parked truck. The posted speed limit was 35 miles per hour.

Defendant was driving north on Crenshaw going 30 or 35 miles per hour; traffic in the same direction was fairly light. At the point of impact there were three traffic lanes. The lane on defendant's left was empty; the only other car in the vicinity was that of Newby traveling one-half block to his rear. Approximately two miles prior to, and up to the instant of impact, defendant drove in a straight line; he did not veer or turn to the right or make any irregular movement; he was driving "just a little bit too close" to the lane in which the truck was parked and, traveling in a straight path, simply ran into the rear of the truck. The amount of the bed of the truck involved in the impact was approximately a foot; the taillight and reflector on the left side of the rear of the flat bed were damaged. There is no evidence defendant attempted to stop, applied his brakes, reduced his speed, turned to the left to avoid the accident, or even saw the truck prior to the impact.

After the collision defendant appeared to be in a daze and

there was an odor of alcohol on his breath; observers at the scene formed the opinion he had been drinking but did not appear to be drunk. It could not be determined by police whether he was dazed from the alcohol or the impact. However, at the hospital defendant refused, upon request of Officer Duggan, to take either a sobriety or blood test. At 2 p. m. on the day of the accident defendant told police he left home at approximately 7 a. m. the day before (August 24); drove to Pomona where he picked up a trailer; ate breakfast in West Covina between 9:30 and 10 a. m.; towed the trailer to Lancaster and transported a horse from one location to another; ate a ham sandwich, some cookies and a peach around 2:30 or 3 p. m.; drove home and had a dish of jello about 6:30 p. m. and ate nothing more up to the time of the collision; at 8:30 or 9 p. m. picked up Mrs. Hathaway to go bowling; bowled in a tournament during which he had two drinks of vodka and tonic and went to a second alley and had one drink there. Asked by police if he had ever been intoxicated before he answered, "Yes"; then to the question what effect this seemed to have on him, he replied that it had a tendency to make him drowsy; but he did not state, when asked by the officer, if it was possible that the drinking and previous activities had made him drowsy while driving home that morning.

Defendant took the stand in his own defense and testified that he bowled at the Southwest Bowling Alley in a tournament between 9 p. m. and 1:15 a. m., and between 9:30 and 11:30 p. m. had two drinks of vodka and tonic; that he and Mrs. Hathaway then went to the Del Mar Bowling Alley and saw the show in the lounge and while there had another drink of vodka and tonic and part of a fourth; that at 1:40 a. m. he headed north on Crenshaw intending to go to 108th Street (he lived approximately one mile from the scene of the collision); that it was his habit while driving north on Crenshaw, when approaching 108th Street, to pull over to make a right-hand turn; that he could remember very clearly up to pulling out of the parking lot and remembered going north on Crenshaw, but his last recollection before the collision, a vague one, was stopping at the intersection of Imperial; that he did not remember the collision but was sober and knew what he was doing; and that he did not recall telling the officer that when he drank he became drowsy—he did say that occasionally he would become drowsy, but only after a big meal.

George Lacy, a forensic chemist, for the defense, testified

that he investigated the accident and made certain tests; that in driving north on Crenshaw the driver would get a feeling of additional width and space in the vicinity of the collision due to an island created at the intersection, building construction, and the set back of buildings and light standards from the east curb; and that he observed that when a southbound car passed by on the service road on the east side of Crenshaw the lights of the passing car would tend to diminish the seeability of a car parked on the east side of Crenshaw in the eyes of drivers proceeding north. However, on cross-examination Lacy admitted that the reflectors of the truck would be visible upon approaching the point of impact; one could tell that it was a parked vehicle some 100 feet before actually arriving there; and if one was looking the reflectors would be visible, and the more one had to drink the less they could be seen.

Appellant contends there is no evidence that he committed an unlawful act, not amounting to a felony, or a lawful act in an unlawful manner; and the evidence at most established that the death was occasioned through accident, misfortune or misadventure.

Section 192, Penal Code, reads in pertinent part: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds: . . . 3. In the driving of a vehicle . . . (b) In the commission of an unlawful act, not amounting to a felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence."

A reviewing court may not reweigh the evidence; and may not reverse a judgment of conviction for insufficiency of the evidence unless it is made clearly to appear that under no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below. (*People v. Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People v. Lindley,* 26 Cal.2d 780 [161 P.2d 227]; *People v. Crooker,* 47 Cal.2d 348 [303 P.2d 753]; *People v. Kerr,* 37 Cal.2d 11 [229 P.2d 777].) Applying this rule, we are satisfied that there is ample evidence to support the determination that defendant either acted negligently in the operation of his automobile, thereby committing an unlawful act; or, in driving his vehicle, a lawful act, did so in a negligent thus unlawful manner. The distinction, if any there be under the instant facts, appears to be of little significance for it is clear that defendant failed to drive his automobile with the usual and ordinary caution

which requires attention to the road and traffic thereon, seeing that which is plainly ahead of him, and avoiding collision with it.

Appellant in his brief has indulged in extensive speculation in order to demonstrate that the facts are not sufficient to raise even an inference of guilt, but the vice of this lies in his almost exclusive reliance upon defense testimony and evidence in his favor. ██ ██ He completely ignores the two fundamental rules on appeal—that this court must assume in favor of the judgment the existence of every fact reasonably deducible from the evidence, and that the lower court is the exclusive judge of the credibility of witnesses, the resolution of factual conflicts and the weight to be accorded the evidence and the facts to be reasonably deduced therefrom. Likewise, appellant relies on the defense version of what occurred in urging the application of *People* v. *Levens,* 28 Cal.App.2d 455 [82 P.2d 698], in which, under the circumstances, therein, the court held that a failure to see a car parked at a 45° angle was not negligence, and *In re Ryan,* 61 Cal.App.2d 310 [142 P.2d 769], which held that a failure to keep a vehicle in one lane and on the highway did not constitute neglect to perform a duty imposed by law. The circumstances leading up to and surrounding the collision take the instant situation out of the purport of either case.

The evidence reveals that just prior to the impact the parked truck was clearly visible to one exercising due care and attention; that defendant did not see the truck prior to the impact; that had he paid attention to the traffic and conditions of the street he would have seen the truck and avoided the same; that his inattention was due to a combination of circumstances arising out of his previous activities; and that his lack of attention constituted negligence, which is sufficient to constitute an unlawful act.

The collision occurred in the middle of summer, the streets were dry, there was no fog and visibility was very clear. At the point of the impact the street was well lighted making the truck visible to approaching traffic. Not only did other drivers see the parked vehicle upon their approach (Newby and Duggan), but the location of the street light, the size of the truck, the rear reflectors and taillight, reflecting about 18 square inches of light on each side of the truck, clearly made the vehicle visible to those approaching. Defense witness Lacy admitted that the reflectors on the truck would be visible as one approached the point of impact and that a parked vehicle

in the truck's position could be seen at least 100 feet away.

Defendant did not see the truck. He drove in a straight path—without reducing his speed, turning to avoid it, swerving, or attempting to stop—directly into the rear of the vehicle. Had he seen it he could easily have slowed down or stopped or swerved to the left, for there was an empty traffic lane to his left and the only other vehicle going north was one-half block behind him.

Prior to the collision defendant had been without sleep for at least 19 hours; during the day he had engaged in strenuous activity—towing a trailer and transporting a horse —and driven in the summer heat from Los Angeles to Pomona to Lancaster and back home; his food intake was scant—since 2:30 or 3 p. m. he had nothing to eat but a dish of jello at 6:30 p. m.; he engaged in the arduous exercise of a bowling tournament; and between 9:30 p. m. and 1:40 a. m. had three and a half drinks of alcohol. ██ There is no direct evidence that defendant was intoxicated although he appeared to be dazed, and at the hospital refused to take a sobriety and blood test. Considering defendant's conduct the court was not bound to believe he had no more than the three and a half drinks he admitted consuming; and even though he claimed to have sustained head injury from the impact, some credence is given to the view that under the circumstances his consumption of liquor so impaired his faculties that he either paid no attention to or was unable to see what was directly in front of him, for he was able to remember little or nothing after starting north on Crenshaw to the time of the collision. But the fact is that prior to the impact defendant was inattentive; whether his inattention was due to fatigue, drowsiness, the effect of alcohol, or a combination of all three, it nevertheless constituted negligence, and the trial judge expressly so found. It is upon this he predicated his adjudication of manslaughter; he stated: "I find that he was guilty of negligence, . . . being that of inattention."

██ Under the law defendant is chargeable with having seen the truck parked in the third lane of the highway, and the inescapable conclusion is that a reasonably prudent person, upon seeing the vehicle would have either stopped or pulled to the left to avoid it, and his failure, under the instant circumstances, to do so was negligence. In this connection the court said in *People* v. *Hoe,* 164 Cal.App.2d 502 [330 P.2d 907] at 508-509: "At the time and just before her automobile struck decedent she was driving straight and about one foot

within the limit of the right-hand travel lane. Although she testified she did not see decedent's car parked at the side of the road and did not see decedent, she is chargeable with what was then visible to her had she exercised care and looked. She is chargeable, then, with seeing the position in which decedent's car had been parked with respect to its proximity to her path of progress and with seeing the decedent pass toward the rear of his car . . .''; and in *People* v. *Wilson,* 78 Cal.App. 2d 108 [177 P.2d 567], at pages 118-119 : ''. . . defendant was not driving in the exercise of ordinary care or in the fulfillment of her duties . . . It is not surprising that the jury determined from the evidence that in causing the death of three people and injury to seven others, defendant was not driving with the care usually exercised by persons of ordinary prudence and caution. There was nothing to obstruct her vision or to excuse her failure to see the crowd in the street ahead of her. It was an inescapable conclusion that she failed to see them in time to avoid them only because she was paying little or no attention to what lay ahead of her. (*People* v. *Leitgab,* 77 Cal.App.2d 764 [176 P.2d 384].)'' The inattention of defendant constituted negligence.

On the other hand, while appellant claims he did not exceed the posted speed limit of 35 miles per hour, the inference is reasonable that under the circumstances he exceeded the basic speed limit (Veh. Code, § 22350)—coming upon the truck before he saw it and could either stop or veer to the left to avoid it. ''Conduct in violation of section 510 [now Veh. Code, § 22350] would necessarily be unlawful conduct . . . For the reasons heretofore stated, violation of this section would have been unlawful even though not penal. . . .'' (*People* v. *Wilson,* 78 Cal.App.2d 108, 117-118 [177 P.2d 567].)

Appellant touches briefly on *People* v. *Penny,* 44 Cal. 2d 861 [285 P.2d 926], and appears to urge that ''there must be a higher degree of negligence than is required to establish negligent default on a mere civil case'' (A.O.B., p. 15), in a manslaughter case; but this is clearly not the law in this state and the *Penny* case, relied upon by appellant, expressly so states. The court was careful to point out that the standard set forth therein was to be used only ''for negligent homicide (Pen. Code, § 192, subd. 2) in other than vehicle cases . . .'' (p. 880), and that ''. . . different standards are set forth for deaths caused through the operation of a vehicle and deaths otherwise caused . . .'' (p. 872). The court in *People* v.

*Wilson,* 78 Cal.App.2d 108 [177 P.2d 567], points up the prevailing rule—that the negligent operation of a motor vehicle is in itself an unlawful act under section 192, subdivision 3(b). In the *Wilson* case, *supra,* it was contended that it was error for the trial court to give an instruction on ordinary negligence on the theory that ordinary negligence is not sufficient to warrant a finding defendant was guilty of manslaughter in the absence of gross negligence. The court said at page 116: "As already stated, the negligent driving of a vehicle is an unlawful act and an element of the misdemeanor offense." And in both *People* v. *Wilson,* 78 Cal. App.2d 108 [177 P.2d 567], and *People* v. *Hoe,* 164 Cal. App.2d 502 [330 P.2d 907], the court in discussing ordinary negligence and deciding the issues therein, applied the standard of care usually exercised by persons of ordinary prudence and caution.

 Appellant relies on two theories of the collision advanced by his expert Lacy—that in driving north to the scene, the driver would get a feeling of additional width or space; and that the illusion was created that the road turned, and that the lights of a south-bound car passing on the service road on the east of Crenshaw would tend to diminish the seeability of the cars parked on the side of Crenshaw. Appellant says Lacy's "conjectures" are as reasonable as that of the court—perhaps better, having been based upon actual observation.

This argument, too, ignores the rules on appeal relating to the functions and powers of this court. The trial judge gave little credence to Lacy's theories, perhaps he felt the facts Lacy stated contradicted his own testimony; in any event, he refused to accept Lacy's opinions as conclusive, giving to them only the weight to which he found them to be entitled. (Pen. Code, § 1127b.) The court had a right to reject Lacy's testimony, and did so; it stated: "The theory of Mr. Lacy all seems very highly improbable to me, that he could have been misled by that unusual indentation; as a matter of fact he did not swerve, according to those witnesses behind him as a result of that indentation, but proceeded almost directly into the collision."

In view of the foregoing we deem it unnecessary to discuss appellant's last contention that the evidence at most established that the death was occasioned through accident, misfortune or misadventure.

The judgment and order are affirmed.

Wood, P. J., and Fourt, J., concurred.