118 Cal.Rptr.2d 159 (2002)
97 Cal.App.4th Supp. 1
The PEOPLE, Plaintiff and Respondent,
v.
Daniel J. BUSSEL, Defendant and Appellant.
No. BR 41234.
Appellate Division, Superior Court, Los Angeles County.
January 17, 2002.
*160 Ezekiel P. Perlo, Encino, and Edward J. Horowitz, Los Angeles, for Defendant and Appellant.
David A. Sklansky and John T. Philipsborn, San Francisco, for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant
Rockard J. Delgadillo, City Attorney, Debbie Lew, Assistant City Attorney, and Candice I. Horikawa, Deputy City Attorney, for Plaintiff and Respondent.

OPINION AND JUDGMENT
LEE, J.
Appellant was charged in an amended misdemeanor complaint with vehicular *161 manslaughter, in violation of Penal Code section 192, subdivision (c)(2).[1] Appellant pleaded not guilty to the charge. At the conclusion of a jury trial, appellant was convicted, and he was later sentenced to summary probation for three years under a variety of terms and conditions, including the requirements to perform 300 hours of community service and to pay a fine of $750, plus penalty assessment, or to make a contribution of $2,000 to the Gamble House in lieu of the $750 fine and penalty assessment.[2] Appellant was not required to serve any time in custody.
In accordance with appellate procedure, we briefly summarize the evidence from the trial in the light most favorable to the verdict. (People v. Perez (2000) 82 Cal. App.4th 760, 763, 98 Cal.Rptr.2d 522.) Appellant was driving his 11 year old stepdaughter to school in the morning. He intended to make a right turn at an intersection, and as he approached it, he looked to his left for oncoming traffic. At the same time, two individuals, Betty Brown, a 73 year old female, the decedent, and Juan Huerta, began walking across an unmarked crosswalk at the intersection. Appellant's lane of traffic was controlled by a stop sign with a limit line. Appellant did not stop at the limit line or stop sign, but rather went through the intersection at about three or four miles per hour.[3]
Appellant did not see Brown and Huerta, who were to his right. His vehicle struck both persons. Brown and Huerta fell to the ground. Huerta suffered abrasions to his knees, while Brown sustained a head injury. Although Brown's head was bleeding at the scene, she did not appear to be seriously injured. She was taken to a hospital, however, where she later died of injuries from the accident.
Appellant presents the following arguments on appeal: (1) ordinary negligence is not enough to support a conviction for vehicular manslaughter; (2) if ordinary negligence is enough under current law, such law violates appellant's constitutional right to due process; (3) the trial court improperly instructed the jury; and (4) the evidence was insufficient to support the verdict. As reflected in the following discussion, we conclude that none of appellant's arguments have merit and affirm the judgment.
The question of whether ordinary negligence is sufficient to justify a conviction for vehicular manslaughter is not a new one. In People v. DeSpenza (1962) 203 Cal.App.2d 283, 21 Cal.Rptr. 275, the defendant was charged with vehicular manslaughter with gross negligence, but the trial court found the negligence was not "`of a gross variety'" and convicted him of misdemeanor vehicular manslaughter in violation of former section 192, subdivision 3(b). (DeSpenza, supra, at p. 284, 21 Cal. Rptr. 275.) On appeal, the defendant argued, as appellant here, that "`there must be a higher degree of negligence than is required to establish negligent default on a mere civil case.'" (Id. at p. 290, 21 Cal. Rptr. 275.) The DeSpenza court stated that "`the negligent driving of a vehicle is an unlawful act and an element of the misdemeanor offense.'" (Id, at p. 291, 21 Cal.Rptr. 275, quoting from People v. Wilson *162 (1947) 78 Cal.App.2d 108,116,177 P.2d 567.) The court also commented that the defendant's contention that something more than ordinary negligence, negligence in a civil context, was required for a vehicular manslaughter conviction was not the law in California. (DeSpenza, supra, at p. 290, 21 Cal.Rptr. 275.)
This same question was addressed by the California Supreme Court in In re Dennis B. (1976) 18 Cal.3d 687, 135 Cal. Rptr. 82, 557 P.2d 514, which is dispositive of the issue in this case. In Dennis B., a minor drove a car and, while changing lanes, negligently struck a motorcyclist who later died of his injuries. The petition alleging that the minor had committed vehicular manslaughter was sustained. One of the issues on appeal was whether ordinary negligence was a sufficient basis upon which to premise criminal liability, or was more required, such as a finding of criminal negligence or an intent to commit manslaughter. (Id. at p. 696, 135 Cal.Rptr. 82, 557 P.2d 514.) The minor made the same argument that appellant makes here, namely, that section 20 provides in relevant part "`[i]n every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence,'" and that the holding in People v. Stuart (1956) 47 Cal.2d 167, 302 P.2d 5, required a finding of criminal negligence to support a manslaughter conviction. (In re Dennis B., supra, at p. 696, 135 Cal. Rptr. 82, 557 P.2d 514.)
The Dennis B. court noted that Stuart held a pharmacist could not be convicted of involuntary manslaughter absent evidence of criminal negligence. (In re Dennis B., supra, 18 Cal.3d at p. 696, 135 Cal.Rptr. 82, 557 P.2d 514.) However, Stuart also specifically stated section 20 makes the union of act and intent or criminal negligence an essential element of every crime "`unless it is excluded expressly or by necessary implication.'" (In re Dennis B., supra, at p. 696, 135 Cal.Rptr. 82, 557 P.2d 514, quoting from People v. Stuart, supra, 47 Cal.2d at p. 171, 302 P.2d 5.) As noted in Dennis B., former section 192, subdivision 3(b), which then set forth the statutory language defining vehicular manslaughter, provided that a homicide was committed "`[i]n the commission of an unlawful act, not amounting to a felony, without gross negligence.....' Thus it was not necessary in this case [Dennis B.] for the People to prove criminal (`gross') negligence, as ordinary negligence may form the basis of a vehicular manslaughter conviction. [Citations.]" (In re Dennis B., supra, 18 Cal.3d at p. 696, 135 Cal.Rptr. 82, 557 P.2d 514, italics added.)
Appellant's brief goes into great detail regarding statutes and cases that pertain to types of manslaughter other than vehicular manslaughter. The Legislature, however, very carefully distinguished the different types of manslaughter. Section 192 defines voluntary, involuntary, and vehicular manslaughter, and provides in relevant part that:
"Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:
(a) Voluntaryupon a sudden quarrel or heat of passion.
(b) Involuntaryin the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle.

(c) Vehicular
(1) Except as provided in Section 191.5, driving a vehicle in the commission of an unlawful act, not amounting to felony, and with gross negligence; *163 or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.
(2) Except as provided in paragraph (3), driving a vehicle in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence." (Italics added.)
The statutory language of section 192, subdivision (c)(2), unambiguously provides that a person may be convicted thereunder for certain acts committed without gross negligence. Under Dennis B., without gross negligence means ordinary negligence. We need not go to other code sections to interpret section 192, subdivision (c)(2), where the language is clear and unambiguous. {People v. Benson (1998) 18 Cal.4th 24, 30, 74 Cal.Rptr.2d 294, 954 P.2d 557; Delaney v. Superior Court (1990) 50 Cal.3d 785, 798, 268 Cal. Rptr. 753, 789 P.2d 934.)
Appellant places great reliance on People v. Cox (2000) 23 Cal.4th 665, 97 Cal. Rptr.2d 647, 2 P.3d 1189. A thorough analysis of this case shows that such reliance is misplaced. In Cox, the defendant punched the victim on the side of his head. The victim fell to the ground and later died of his injuries. An autopsy revealed that he died from an extensive skull fracture and internal bleeding. The defendant was charged with involuntary manslaughter under section 192, subdivision (b). The trial court instructed the jury that, as a matter of law, battery was an inherently dangerous offense, a predicate for involuntary manslaughter, and the prosecution did not have to provide any further proof regarding the circumstances of the underlying misdemeanor. (Cox, supra, at p. 669, 97 Cal.Rptr.2d 647, 2 P.3d 1189.)
The defendant was convicted. On appeal, he asserted that the trial court erred in instructing the jury that battery was inherently dangerous. Instead, argued the defendant, the court should have instructed the jury that the unlawful act or misdemeanor battery that caused the victim's death had to be found "dangerous under the circumstances of its commission" to support a conviction for involuntary manslaughter. (People v. Cox, supra, 23 Cal.4th at p. 669, 97 Cal.Rptr.2d 647, 2 P.3d 1189.) The Court of Appeal affirmed. The defendant then sought review in the Supreme Court.
The Supreme Court granted review to determine whether its holding in an earlier case, People v. Wells (1996) 12 Cal.4th 979, 50 Cal.Rptr.2d 699, 911 P.2d 1374, "requiring that the underlying unlawful act on which a charge of involuntary manslaughter is based must be shown to be dangerous under the circumstances of its commission, applies equally to all misdemeanors committed with general criminal intent on which a charge of involuntary manslaughter is predicated." (People v. Cox, supra, 23 Cal.4th at p. 670, 97 Cal.Rptr.2d 647, 2 P.3d 1189.) Wells had addressed the question of whether an unlawful act on which a charge of involuntary manslaughter is based "must be inherently dangerous, that is, dangerous in the abstract, or dangerous under the circumstances of its commission. We held [in Wells ] that `the offense must be dangerous under the circumstances of its commission. The inherent or abstract nature of a misdemeanor which underlies an involuntary manslaughter charge is not dispositive.'" (People v. Cox, supra, 23 Cal.4th at p. 670, 97 Cal.Rptr.2d 647, 2 P.3d 1189, quoting from People v. Wells, supra, 12 Cal.4th at p. 988, 50 Cal.Rptr.2d 699, 911 P.2d 1374.)
*164 The Cox opinion discussed the facts in the Wells case, wherein the defendant had been speeding on a hilly, curvy road when he lost control and struck another vehicle, killing a passenger in the latter automobile. The issue in Wells concerned the language present both in section 192, subdivision (b), as well as in section 192, subdivision (c)(1), namely, "in the commission of an unlawful act, not amounting to felony." Wells held that the same meaning had to be accorded to the same language in each of these subdivisions. (People v. Cox, supra, 23 Cal.4th at p. 671, 97 Cal. Rptr.2d 647, 2 P.3d 1189.) The Cox opinion noted that the Court of Appeal in Cox had misread Wells and held that the actual "dangerousness" of the misdemeanor was irrelevant. (Id. at p. 673, 2 P.3d 1189.)
Thus, Cox holds that where a defendant is charged with involuntary manslaughter under either basis contained in section 192, subdivision (b), the offense itself must be dangerous under the circumstances of its commission, and the abstract nature of the charge is not dispositive. (People v. Cox, supra, 23 Cal.4th at p. 674, 97 Cal.Rptr.2d 647, 2 P.3d 1189.) In footnote 4, upon which appellant places special reliance, the Cox court stated the Wells analysis, that the language "unlawful act, not amounting to felony," in section 192, subdivision (b), also applied to that same language in subdivision (c). (Cox, supra, at p. 674, fn. 4, 97 Cal.Rptr.2d 647, 2 P.3d 1189.) It is primarily from this footnote that appellant argues that the Supreme Court abrogated the holding in Dennis B., that ordinary negligence is sufficient to support a conviction for vehicular manslaughter, and established a new rule that more than ordinary negligence is required.
This position is without merit. As previously noted, Dennis B. in relevant part simply provides that where the charge is based on an unlawful act, the unlawful act must not simply be dangerous in the abstract, but also dangerous under the circumstances of its actual commission. CALJIC No. 8.90, which was read to the jury, is in full compliance with Wells and Cox, since it provides, following the language "an unlawful act not amounting to a felony," the additional language "which under the circumstances of its commission was dangerous to human life...."
Appellant's next contention is that if ordinary negligence is the current standard, any imposition of criminal liability as a consequence of ordinary negligence violates his due process rights. Appellant asserts two reasons in support of this contention: (1) section 192, subdivision (c)(2), is ambiguous, in that "without gross negligence" could mean something less than gross negligence but more than ordinary negligence; and (2) "the unjustifiable randomness of the imposition of criminal liability." The first argument is resolved by Dennis B., which reflects that there is no ambiguity and "without gross negligence" means "ordinary negligence." This point requires no further discussion.
We treat the second argument as a substantive due process challenge, namely, an argument that the Legislature acted arbitrarily in providing that an act of ordinary negligence can have criminal ramifications. Case law and common sense, however, do not support this position. "[S]ubstantive due process protects against arbitrary legislative action; it requires legislation not to be `unreasonable, arbitrary or capricious' but to have `a real and substantial relation to the object sought to be attained.' [Citation.] Thus, legislation does not violate substantive due process so long as it reasonably relates `to a proper legislative goal.' [Citations.]" (Coleman v. Department of Personnel Administration (1991) 52 Cal.3d 1102, 1125, 278 Cal.Rptr. 346, 805 P.2d 300; People v. *165 Hodges (1999) 70 Cal.App.4th 1348, 1356, 83 Cal.Rptr.2d 619.) Furthermore, "neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute." {Hale v. Morgan (1978) 22 Cal.3d 388, 398, 149 Cal.Rptr. 375, 584 P.2d 512.)
Not only does the regulation of public highways by the state fall within the ambit of the general police power, but the state also has a substantial state and public interest to protect persons on its roads. {Escobedo v. State of California (1950) 35 Cal.2d 870, 875-876, 222 P.2d 1, overruled on other grounds in Rios v. Cozens (1972) 7 Cal.3d 792, 799, 103 Cal.Rptr. 299, 499 P.3d 979.) As regards section 192, subdivision (c)(2), the Legislature could rationally decide that, due to the special and heightened risks imposed by vehicles weighing thousands of pounds moving on a highway, no matter how slowly, criminal responsibility may be imposed on persons guilty of ordinary negligence that results in the death of another human being. Most jurisdictions that have addressed this issue have held that a vehicular manslaughter conviction may be premised on ordinary negligence. (See, e.g., Egle v. People (Colo.1966) 159 Colo. 217, 222 [411 P.2d 325]; State v. Russo (Conn.Super.Ct.1982) 38 Conn.Supp. 426, 429-32 [450 A.2d 857]; State v. Arena (Hawaii 1963) 46 Haw. 315, 317 [379 P.2d 594].)
Appellant's next contention is that the trial court improperly instructed the jury on the elements of vehicular manslaughter. CALJIC No. 8.90, which was read to the jury in the form below, provided as follows: "Defendant is accused in Count I of having committed the crime of Vehicular Manslaughter in violation of section 192(c)(2) of the Penal Code. [¶] Every person who drives a vehicle and unintentionally but unlawfully kills another human being is guilty of the crime of Vehicular Manslaughter not involving drugs or alcohol in violation of Penal Code section 192(c)(2). [¶] A killing is unlawful when a person commits an unlawful act not amounting to a felony which is dangerous to human life under the circumstances of its commission, or negligently commits an act ordinarily lawful which might produce death, which unlawful or negligent act is a cause of the death of another human being. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. The driver of a vehicle committed an unlawful act not amounting to a felony, which under the circumstances of its commission was dangerous to human life, namely, a violation of 21950(a) of the Vehicle Code or committed negligently an act ordinarily lawful which might cause death; and [¶] 2. The unlawful or negligent act was a cause of the death of another human being."
As is apparent, this instruction sets forth two elements to the offense. Appellant does not challenge the second element, that a person must die as a consequence of the unlawful or negligent act. Appellant's challenge relates to the first element, which can be satisfied in one of the following two ways: (1) the driver commits an unlawful act not amounting to a felony, which under the circumstances of its commission was dangerous to human life, namely, a violation of 21950, subdivision (a) of the Vehicle Code (failure to yield the right-of-way to pedestrian in crosswalk); or (2) the driver negligently commits an act ordinarily lawful which might cause death. Appellant argues that the second alternative, like the first, required language that the act "under the circumstances of its commission was dangerous to human life."
There are a number of difficulties with appellant's argument. First, appellant did not make this objection in the trial court. Appellant's only objection below to *166 CALJIC No. 8.90 was that "wherever it [CALJIC 8.90] talks of negligence, the word `criminally negligent' should beor the word `criminally' should be placed before `negligence.'" This is, obviously, a different objection from that asserted in this appeal. The failure to make a proper objection at trial normally results in a waiver of that issue on appeal. (People v. Rivera (1984) 162 Cal.App.3d 141, 146, 207 Cal.Rptr. 756.)
It is correct that an appellate court may review any instruction given, even though no objection was made in the lower court, if the substantial rights of a defendant are affected. (§§ 1259, 1469.) The cases equate "`substantial rights'" with reversible error, i.e., "did the error result in a miscarriage of justice?" (People v. Arredondo (1975) 52 Cal.App.3d 973, 978, 125 Cal.Rptr. 419.) In this instance, however, the trial court did not err in giving the challenged instruction to the jury. As stated previously, CALJIC No. 8.90 accurately sets forth the law contained in section 192, subdivision (c)(2). Furthermore, alternative instruction No. 2 required that the jury, if it found appellant guilty under this alternative, had to find that his actions were such that "might cause death." This is essentially the same requirement as determining that his actions, under the circumstances, were "dangerous to human life." To include the language sought by appellant would have been repetitive. A trial court is not required to give an instruction which would be duplicative of other instructions already given. (People v. Turner (1994) 8 Cal.4th 137, 203, 32 Cal.Rptr.2d 762, 878 P.2d 521.)
Lastly, as previously noted, appellant's reliance on People v. Wells, supra, 12 Cal.4th 979, 50 Cal.Rptr.2d 699, 911 P.2d 1374, and People v. Cox, supra, 23 Cal.4th 665, 97 Cal.Rptr.2d 647, 2 P.3d 1189, is misplaced. The additional language is required, under such authority, to be placed in alternative instruction No. 1, not alternative instruction No. 2 in section 192, subdivision (c)(2).
Appellant's final argument is that the evidence was insufficient to support the verdict. The evidence, however, was more than sufficient to support a conviction under either of the alternatives set forth in section 192, subdivision (c)(2) and CALJIC No. 8.90. Failing to stop for pedestrians in a crosswalk is manifestly dangerous to human life under the circumstances and likely to cause death. Although a person struck by a slow-moving vehicle might not always sustain mortal injuries, this is a very reasonable possibility, in light of the heavy weight of a vehicle and its metal exterior.
The judgment is affirmed.
We concur: BEVERLY, P.J., and KRIEGLER, J.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] The Gamble House is a charitable organization and facility where the decedent in this matter served for many years as a docent.
[3] The evidence at trial was largely uncontradicted, with one exception: the police officer who arrived at the scene of the accident testified that appellant said he "rolled" through the stop sign and limit line without stopping, while appellant testified he did not make this statement to the officer and he did, in fact, stop before the stop sign and limit line.