Filed 2/11/21  In re Y.G. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Y.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. Y.G., Defendant and Appellant. | A157355 (Solano County Super. Ct. No. J044008) |

Y.G. appeals from the juvenile court's dispositional order sustaining the wardship petition for misdemeanor vehicular manslaughter, driving without a license, and driving at an unsafe speed.  Appellant contends the juvenile court erred by failing to apply a "reasonable juvenile" standard in assessing whether he acted negligently, insufficient evidence supported the negligence finding, and the sudden emergency doctrine applied.  We are not persuaded by these arguments and thus affirm.

## I.  BACKGROUND

The Solano County District Attorney filed a petition under Welfare and Institutions Code section 602, subdivision (a), alleging appellant committed misdemeanor vehicular manslaughter (Pen. Code, § 192, subd. (c)(2);

count 1), driving without a license (Veh. Code, § 12500, subd. (a); count 2), and driving at an unsafe speed (Veh. Code, § 22350; count 3).

The allegations in the petition arose from an automobile accident that occurred while appellant was driving his sister to their mother's place of employment. Prior to the accident, appellant had been home alone with his older sister. "[O]ut of nowhere," his sister began threatening to kill herself while holding a knife. Appellant testified his sister left the house and got into the family's car. He followed her, opened the car door, and managed to disarm her. However, his sister continued to make threats of self-harm. Appellant stated he had left his phone in his bedroom and was reluctant to get it because he thought his sister might run away if left alone. He also was concerned about a slow police response time, although he acknowledged he could have called their mother. Appellant decided to drive his sister to their mother, and he briefly left her alone to get the car key. His sister attempted to leave the vehicle, but appellant locked the doors so she could not leave, put a seatbelt on his sister, and began driving.

Appellant did not have a license at the time or any meaningful driving experience. He testified he had driven his father's vehicle once and had driven some golf carts in an orchard. However, appellant stated he felt he was doing a good job driving the vehicle. He believed he was going "[n]o more than 60" miles per hour prior to the collision. Putah Creek Road, where the collision occurred, has a 55-mile-per-hour speed limit.

Appellant testified that he had been driving for a few minutes when his sister removed her seatbelt and appeared to be intending to jump out of the vehicle. She attempted to opened the door, but it closed "[be]cause of the wind." In response, appellant grabbed her with his arm. Appellant did not remember pressing down on the gas pedal while reaching over to grab his

2

sister, but when he looked back at the road he was about to crash into a truck in front of him. Although that section of Putah Creek Road was completely straight, he did not see the truck until immediately before the accident. Appellant attempted to avoid the truck but he collided with the left rear of the pickup truck. The collision caused the truck to leave the roadway and hit a tree, resulting in the truck driver's death and major injuries to the truck's passenger.

Appellant denied all allegations in the petition. The court conducted a contested jurisdictional hearing and found appellant had committed the charged offenses. As relevant to this appeal, the court found the behavior of appellant's sister was "foreseeable" because "[s]he has a history of acting out," she acted out and attempted suicide on the day of the incident, and it was "foreseeable that she would continue to act out in a manner that was threatening to herself and [appellant]." The court declared appellant a ward of the court and sentenced him to probation. Appellant timely appealed.

## II. DISCUSSION

On appeal, appellant only challenges the finding he committed vehicular manslaughter without gross negligence. In connection with this issue, appellant raises three arguments. First, he contends insufficient evidence supports a finding of negligence because it was based on an erroneous standard of care. Second, appellant asserts he did not engage in negligent driving. Finally, appellant argues any alleged finding of negligence should be negated by the sudden emergency doctrine. We address each argument in turn.

3

## A. Sufficiency of the Evidence

### 1. Vehicular Manslaughter

Penal Code section 192, subdivision (c)(2) (section 192(c)(2)), defines vehicular manslaughter as: "Driving a vehicle in the commission of an unlawful act, not amounting to a felony, but without gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence." The parties agree a violation of section 192(c)(2) arises from ordinary negligence. (See *People v. Thompson* (2000) 79 Cal.App.4th 40, 53; CALCRIM No. 593 (Nov. 2020 ed.).) Thus, to sustain the petition based on the vehicular manslaughter count, the record must show substantial evidence of ordinary negligence.

The test for substantial evidence is the same in a juvenile delinquency case as the test in a criminal case. (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371.) The sole function of the appellate court is to consider the evidence in the light most favorable to the judgment, presume in support of the judgment every fact that can be reasonably deduced from the evidence, and "determine . . . whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432.) The evidence must be "reasonable, credible, and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

### 2. Standard of Care

Appellant argues the juvenile court applied the improper standard of care when making its finding of negligence. Specifically, appellant asserts his conduct should have been measured against a reasonably prudent

4

juvenile, and the court's application of an adult standard of care violated his due process rights.[1]  We disagree.

No California court has applied a "reasonable juvenile" standard when considering the standard of care for negligent vehicular manslaughter.  And, in other contexts, courts have expressly rejected such a standard.  For example, in *In re R.C.* (2019) 41 Cal.App.5th 283, the minor, R.C., and another minor attempted to rob a store.  (*Id.* at p. 285.)  During that robbery, the other minor assaulted the store clerk.  (*Ibid.*)  At his adjudication hearing, R.C. relied upon a law review article, Northrop and Rozan, *Kids Will be Kids: Time for a "Reasonable Child" Standard for the Proof of Objective Mens Rea Elements* (2017) 69 Me. L.Rev. 109,[2] to argue " 'the aiding and abetting standard should . . . be revised for juveniles to . . . recognize[ ] the developmental differences between the adult brain and the adolescent brain.' "  (*R.C.*, at p. 285.)  The juvenile court rejected this argument, stating, " 'I don't think the brain science argument really pertains to the issues of legal liability so much as it does to [the] appropriate disposition in the case.' "  (*Ibid.*)  On appeal, R.C. argued holding a juvenile responsible for the natural

---

[1] In response, the Attorney General argues appellant waived this issue by failing to raise it in the juvenile court.  " 'Generally, points not urged in the trial court cannot be raised on appeal.  [Citation.]  The contention that a judgment is not supported by substantial evidence, however, is an obvious exception.' "  (*People v. Butler* (2003) 31 Cal.4th 1119, 1126.)  Similarly, a pure question of law based upon uncontroverted facts may be raised for the first time on appeal.  (See, e.g., *People v. Putney* (2016) 1 Cal.App.5th 1058, 1068, fn. 7.)  Accordingly, we conclude appellant has not waived his challenge that insufficient evidence supports the petition on the vehicular manslaughter count had the court applied the proper standard of care.

[2] Appellant also relies on this article to support his position.  We note law review articles are not binding on this court.  (*People v. Wilcox* (2013) 217 Cal.App.4th 618, 626 [law review articles are not a primary or secondary authority and do not compel a particular result].)

and probable consequences of a robbery violates due process because minors lack the capacity to anticipate the consequences of criminal conduct. (*Id.* at p. 287.) The Court of Appeal rejected this argument. It explained requiring courts to "consider 'non-developed brain' and impulsivity . . . . would require significant rewriting of juvenile law. This is not our legitimate function. This novel theory is best addressed to the Legislature. We express no opinion on its wisdom. We agree with the juvenile court that this subjective component goes to the issue of disposition, not adjudication." (*Ibid.*; accord *People v. Steele* (2002) 27 Cal.4th 1230, 1253 [objective reasonable person standard does not change based on factors such as intoxication, mental deficiencies, and psychological dysfunction].) This conclusion is in accord with the Welfare and Institutions Code, which confers jurisdiction over conduct by a minor that would be a crime if committed by an adult (Welf. & Inst. Code, § 602; *In re W.B.* (2012) 55 Cal.4th 30, 42–43), but requires courts to consider "the age of the minor" for disposition (Welf. & Inst. Code, § 725.5; *In re Joseph H.* (2015) 237 Cal.App.4th 517, 542).

Appellant argues the reasoning in *J. D. B. v. North Carolina* (2011) 564 U.S. 261, which applied a reasonable child standard to *Miranda*[3] analyses, should be extended to a negligence analysis. While the Supreme Court in *J. D. B.* found, in the context of *Miranda* advisements, that courts must consider how a reasonable child in the juvenile's situation would perceive the situation, it did not discuss the appropriate standard for assessing a minor's criminal culpability. As noted in *In re R.C.*, to the extent the United States and California Supreme Courts have applied different standards for juveniles, those standards have generally arisen when assessing appropriate punishment. (See, e.g., *Roper v. Simmons* (2005)

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

543 U.S. 551, 575 [a person under the age of 18 may not be sentenced to death]; *Graham v. Florida* (2010) 560 U.S. 48, 74 [juveniles who commit nonhomicide offenses may not be sentenced to life in prison without parole]; *People v. Caballero* (2012) 55 Cal.4th 262, 268 [sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile's natural life expectancy violates the Eighth Amendment's prohibition against cruel and unusual punishment].)

Likewise, appellant's reliance on *In re Manuel L.* (1994) 7 Cal.4th 229, *In re Paul C.* (1990) 221 Cal.App.3d 43, and *In re J.E.* (2020) 54 Cal.App.5th 309 are misplaced. Those cases address Penal Code section 26, which articulates a presumption that a minor under the age of 14 is incapable of committing a crime. These courts assessed under what context this presumption could be rebutted—including by considering factors such as the minor's age, experience, and understanding—such that a minor under the age of 14 could be made a ward of the court. (*In re Manuel L.*, at p. 232; *In re Paul C.*, at p. 52; *In re J.E.*, at p. 314.) Nothing in these cases or Penal Code section 26 suggests such factors could be used to exempt minors over the age of 14 from criminal liability.

Appellant also argues generally against the presumption of using a civil negligence standard in the criminal context, noting California's codification of a "criminal negligence" concept. However, appellant concedes section 192(c)(2) only requires ordinary negligence while also arguing such a stance "makes California an outlier." Even assuming California is an "outlier" by recognizing vehicular manslaughter based on ordinary negligence, it does not alter our analysis. Section 192(c)(2), specifically criminalizes vehicular manslaughter "without gross negligence." The California Supreme Court has interpreted this phrase to reference ordinary

negligence, and lower courts have consistently followed this precedent. (See *In re Dennis B.* (1976) 18 Cal.3d 687, 696 ["ordinary negligence may form the basis of a vehicular manslaughter conviction"]; *People v. Bussel* (2002) 97 Cal.App.4th Supp. 1, 8 [" 'without gross negligence' means 'ordinary negligence' "]; *People v. Kumar* (2019) 39 Cal.App.5th 557, 564 ["A necessarily lesser included offense [of vehicular manslaughter with gross negligence] is vehicular manslaughter with ordinary negligence, a misdemeanor that requires only a finding of ordinary negligence."].) Apart from noting that other states impose different statutory frameworks, appellant offers no basis for diverging from the California Supreme Court's holding in *In re Dennis B.* Nor do we believe such a basis exists. (See *Rose v. Hudson* (2007) 153 Cal.App.4th 641, 652 [to the extent appellant argued a Supreme Court decision "was wrongly decided, the argument fails, as we are bound to follow the precedent of the California Supreme Court"].)

Accordingly, we conclude the juvenile court properly applied the reasonable person standard in assessing whether appellant acted negligently. As discussed in part II.C., *post*, we also conclude substantial evidence supports the court's findings.

## B. Negligent Driving

Appellant next argues the collision occurred " 'through misfortune or by accident' without 'evil design, intention, or culpable negligence.' " (See Pen. Code, § 26.) However, appellant concedes this argument is contingent on a finding "that the fatal collision was the result of accidental, non-negligent behavior . . . ." (See *People v. Hussain* (2014) 231 Cal.App.4th 261, 269 [defense of accident operates "only to negate the mental state element of the offense charged"].)

Undoubtedly, "the law establishes 'that every mistake of judgment is not negligence, for mistakes are made even in the exercise of ordinary care, and whether such mistakes constitute negligence, is a question of fact.' " (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 508.) "Ordinary negligence is defined as 'acts or omissions which are not compatible with the standard of care exercised by an abstract man of ordinary prudence.' [Citation.] 'Ordinary negligence . . . is the failure to use reasonable care to prevent reasonably foreseeable harm to oneself or someone else. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation . . . .' " (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1175.)

Appellant contends reaching for his sister, unintentionally letting his foot press down the accelerator, and looking away from the road are mistakes an ordinarily cautious person would have made. We disagree. Appellant testified Putah Creek Road, where the collision occurred, was "all straight." Yet he did not see the truck until immediately before the collision. Likewise, the passenger in the truck testified "there were no cars in either direction" at the time they turned onto Putah Creek Road. These facts indicate there initially was a significant distance between the vehicles. Despite this distance and the fact that the truck was travelling at approximately 50 to 55 miles per hour, appellant took his eyes off the road and accelerated for a sufficiently long period of time that he was able to catch up to and collide with the truck. The only reasonable inference from these facts is that appellant either was driving at a much faster rate of speed than he admitted[4]

---

[4] The police officer who responded to the collision testified the damage to the vehicles and the evidence at the scene indicated the truck was travelling at approximately 55 to 60 miles per hour and appellant's vehicle "was traveling at a much greater speed than that pickup was." He further

or he looked away from the road for an extended period of time.  Neither conclusion bodes well for his position.

In addition, appellant decided to drive despite having no license,[5] no permission to drive the family vehicle, and practically no driving experience. He did so with a passenger (his sister) who he knew was having a mental health crisis and acting erratically.  Moreover, she had already indicated a reluctance to be in the vehicle by attempting to exit the car while it was parked and refusing to put on her own seatbelt.  Appellant decided to drive rather than go to his room, retrieve his phone, and call for assistance. Although appellant expressed concern about leaving his sister to get his phone, he left her alone to retrieve the car keys.  Based on these facts, substantial evidence supports the juvenile court's finding of negligence.

## C. *The Sudden Emergency Doctrine*

The sudden emergency doctrine, also referred to as the doctrine of "imminent peril," is based on the theory that "a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same

---

noted appellant's statement that he was travelling at 55 to 60 miles per hour and then unintentionally pressed down on the accelerator was consistent with his observation at the scene.

[5] Appellant argues his unlicensed status is inadmissible as to the issue of negligence.  "[I]t has long been the rule in both civil and criminal cases that evidence that a driver is unlicensed is not admissible on the issue of negligence as the cause of an accident." (*People v. Taylor* (1986) 179 Cal.App.3d Supp. 1, 6.)  But the juvenile court did not assert appellant's unlicensed status was the cause of the accident.  Rather, it noted his unlicensed status and lack of driving experience when addressing appellant's decision to drive.  In any event, the other evidence in the record is sufficient to affirm the juvenile court's finding of negligence.

judgment and prudence that is required of him in exercise of ordinary care in calmer and more deliberate moments." (*Leo v. Dunham* (1953) 41 Cal.2d 712, 714.) " 'The doctrine . . . is properly applied only in cases where an unexpected physical danger is presented so suddenly as to deprive the driver of his power of using reasonable judgment. [Citations.] A party will be denied the benefit of the doctrine of imminent peril where that party's negligence causes or contributes to the creation of the perilous situation.' " (*Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 399 (*Shiver*).)

Appellant contends his sister's attempt to jump out of the vehicle while he was driving constituted a sudden emergency. Appellant further asserts his decision to drive was in response to a sudden emergency—i.e., his sister's mental health crisis. Neither situation supports application of the sudden emergency doctrine.

The sudden emergency doctrine clearly does not apply to appellant's sister's attempt to jump out of the vehicle. She would not have been able to do so had appellant not made the decision to drive her to their mother. Accordingly, appellant's negligence in deciding to drive the vehicle contributed to the perilous situation, and he may not now seek the benefit of the sudden emergency doctrine. (See *Shiver*, *supra*, 24 Cal.App.5th at p. 399.)

The question of whether the sister's initial threats of self-harm created a sudden emergency that excused appellant's negligent decision to drive the vehicle is more challenging. However, we also conclude it does not trigger the sudden emergency doctrine. First, the immediate danger was his sister's threat of self-harm. Appellant resolved this issue by disarming her. While his sister may have continued to act erratically, nothing in the record suggests she was "of imminent danger" to herself or others. (*Leo v. Dunham*,

11

*supra*, 41 Cal.2d at p. 714.)  Likewise, the danger was no longer " 'so sudden[ ]' " as to deprive appellant of his " 'power of using reasonable judgment.' " (*Shiver*, *supra*, 24 Cal.App.5th at p. 399.)  In fact, appellant testified he considered his options, including how long it would take for the police to arrive and what his mother would have wanted him to do.  He then proceeded to drive for at least a few minutes, during which he had time to reconsider his decision and stop or turn around the vehicle.  He did not do so.  Accordingly, appellant's sister's initial threat of self-harm, which resulted in his decision to drive the vehicle, did not trigger the sudden emergency doctrine.

## III.  DISPOSITION

The judgment is affirmed.

MARGULIES, J.


WE CONCUR:


HUMES, P. J.


SANCHEZ, J.


A157355
*In re Y.G.*